**In re Lawrence Charles HAYES Sharon Glynn Hayes, Debtors.**

**Bankruptcy No. 388–00187–H13.**

United States Bankruptcy Court, D. Oregon.

March 13, 1990.

Don Thacker, Portland, Or., for debtors.

Donald H. Hansen, Portland, Or., for creditor.

Robert W. Myers, Portland, Or., trustee in bankruptcy.

## OPINION

HENRY L. HESS, Jr., Chief Judge.

This matter came before the court upon Great Western Bank's objections to the

---

debtors' Fourth Amended Chapter 13 Plan. The creditor was represented by Donald H. Hansen of Portland, Oregon. The debtors were represented by Don Thacker, also of Portland.

For the first time, this court is called upon to determine how to apply the ruling of *In Re Hougland,* 886 F.2d 1182 (9th Cir.1989). In that case, the Ninth Circuit Court of Appeals ruled that, notwithstanding § 1322(b)(2),[1] a claim secured only by the debtor's residence could be bifurcated into secured and unsecured claims under § 506(a). The lender's rights could then be modified as to the unsecured portion. The *Hougland* opinion is not instructive on how to structure payments after avoidance of the lien on the unsecured portion, and it is there that the dispute arises in this case.

The debtors and creditor, Great Western Bank (Bank), agree the value of the collateral (which is the debtors' residence) is $72,000. The balance owed is approximately $96,000. Under *Hougland,* the creditor has an allowed secured claim in the amount of $72,000 and an allowed unsecured claim for the difference of approximately $24,000.

### ISSUE

The creditor objected to the debtors' proposed Fourth Amended Plan because it made no provision for curing postpetition defaults, which exceed $8,000. The debtors propose to allocate the missed payments to the unsecured portion of the claim. Since the plan provides no dividend on unsecured claims, the debtors reason that they need not cure the missed payments. In the alternative, the debtors propose to reduce the amount of the monthly payments to reflect the lower balance which must be repaid. The issue before the court is whether either option is permissible under *Hougland* and, if not, what is the proper allocation of postpetition payments.

1. All statutory references are to title 11 of the United States Code.

Section 1322(b)(2) allows a chapter 13 plan to:

### DISCUSSION
#### *The Hougland Ruling*

The *Hougland* holding is limited to the following:

Congress quite plainly has provided for the separation of undersecured claims into two components—a secured component and an unsecured component. It has then provided for their treatment in chapter 13 proceedings. The secured portion has special protection when residential real estate lending is involved. The unsecured portion does not. *In Re Hougland, supra* at 1185.

*Hougland* does not suggest how to structure plan payments to reconcile the "special protection" of § 1322(b)(2) with the fact that only a portion of the outstanding balance may be repaid under a plan.

#### *The Debtors May Not Alter The Amount of the Monthly Payment*

■ Section 1322(b)(2) prohibits modifying *the rights of holders* of claims secured solely by the principal residence. Therefore, the inquiry is what rights are possessed by the holders of secured claims.

Outside of bankruptcy the holder of an obligation secured by realty has the right to receive payments in installments (including interest as specified in the note or contract) until the entire obligation has been paid in full, regardless of the value of the property. The lien is not satisfied until the entire obligation, both principal and interest, has been paid. Agreements generally provide that if the debtor/purchaser fails to perform the obligations imposed by the agreement, the creditor has a right to foreclose. The law may or may not permit a judgment for a deficiency if the amount received in the foreclosure is less than the debt.

Can the debtor "modify" the above rights?; i.e., change the amount of the monthly payment, change the rate of inter-

modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence....

est, or make other changes in the agreement? That depends upon the extent of the "special protection" intended by § 1322(b)(2). To ascertain the protection afforded a creditor who holds "a claim secured only by a security interest in real property that is the debtor's principal residence" it is helpful first to consider what the debtor can do regarding a lien which is not secured by the debtor's principal residence. Two Code sections come into play.

The first is § 1322(b)(5), which provides that the plan may:

> provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the payment is due after the date on which the final payment under the plan is due.

Under § 1322(b)(5), all of the provisions of the note or contract remain in full force and affect. The debtor is, however, given a reasonable time to cure past defaults.

The second applicable section is §´1325, which provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
>    *    *    *    *    *    *
>
> (5) with respect to each allowed secured claim provided for by the plan—
>
>    *    *    *    *    *    *
>
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; * * *

These provisions permit changing the terms and restructuring the debt. To comply with these requirements the debtors could, on the date of confirmation, pay to the creditor the amount of the allowed secured claim in full satisfaction of the lien, even though this sum was less than the entire amount of the debt. Only the "allowed secured claim" need be paid in order to satisfy the lien. In the alternative, the debtors can provide for distribution of property of a value, as of the effective date of the plan, equal to the amount of the allowed secured claim. One of the ways this can be accomplished is by providing a stream of payments which have a present value equal to the allowed secured claim. The stream of payments must, however, be appropriately discounted to have a present value equal to the allowed secured claim. This can be done by providing for an appropriate rate of interest on the declining balance.

Under this latter alternative treatment of an allowed secured claim, it is not necessary that the amount of the payments be the same as the payments provided in the contract nor does the rate of interest necessarily have to be the same as the rate of interest in the contract. While courts are divided as to what the rate of interest must be, none require that it be the rate of interest provided in the contract. All that is required is that the future payments are the equivalent of the present value of the secured claim. This treatment of an allowed secured claim is referred to as "cram-down".

Thus, under § 1322(b)(5) and § 1325(a)(5) the debtor has two alternatives for treatment of a claim secured other than by a security interest in the principal residence. He or she may either leave the contract intact (maintain and cure) or alter the terms and pay the present value of the secured claim (cram-down).

Given the above, altering the monthly payment or other term must be considered a modification which is impermissible when dealing with a creditor secured solely by the principal residence. If cram-down were not treated as a modification, then the "special protection" language of § 1322(b)(2) provided for claims secured by the residence would be superfluous and could be stricken from § 1322(b)(2). The debtors could utilize the same remedies whether or not the claim was secured solely by the principal residence.

Where possible, the court should interpret the statutes in a manner which gives meaning to all of their provisions. It should not interpret § 1322(b)(2) to render meaningless the language "other than a

claim secured only by a security interest in real property that is the debtor's principal residence." *Hougland* does not suggest such an interpretation. It merely holds that dividing the claim into an allowed secured claim and an allowed unsecured claim under § 506(b) is not a modification of the allowed secured claim. Since utilizing § 1325(a)(5) to change the monthly payments or the rate of interest would be an impermissible modification, the only remedy left to the debtors is to maintain the regular payments and cure all defaults under § 1322(b)(5). The court therefore concludes that in the instant case, the debtors may not change the amount of the monthly payment.

Note that under the *Hougland* ruling, some term of the agreement *must* be changed if the debt is not going to be repaid in full. When the claim is divided into an allowed secured claim and an allowed unsecured claim, the amount to be paid on the secured claim will be less than the debt contemplated by the agreement. There necessarily must be some additional change from the terms of the agreement since following it in all respects would result in payment of the entire debt. If the monthly payment and interest rate remain the same, and if the debtors must cure defaults as provided in § 1322(b)(5), then obviously the maturity date will be shortened.

The debtor argues that this acceleration is an impermissible modification. The court disagrees. Accelerating the maturity date is the change which is least likely to adversely affect a creditor. In fact, it is common for loan agreements to permit the debtor to prepay a portion of the debt, which would result in an acceleration of the maturity date. This acceleration results not from actions of the creditor but from the debtors' request that the claim be divided under § 506. The debtors should not be heard to complain of the results following from their voluntary action.

### The Debtors May Not Apply The Defaults To the Unsecured Portion Of the Debt

We turn now to the matter of whether the overdue payments, i.e., the defaults,

can be treated as a part of the allowed unsecured claim as contended by the debtors. As noted above, Section 1322(b)(5) provides the only payment option available to a debtor who wishes to retain a residence which is the sole collateral for a claim. That section contemplates the maintenance of regular payments *and* the curing of defaults. This court interprets that section as mandating the curing of any defaults. It would seem that permitting the debtor merely to make the contract payments but not cure defaults as required by § 1322(b)(5) would not provide the "special protection" referred to in *Hougland.*

### The Proper Allocation of Postpetition Payments

At hearing, the debtors indicated that allocation of postpetition payments would be difficult if payments on the secured claim were not reamortized over the remaining term of the loan (thereby reducing the amount of the monthly payment). Reamortization is not necessary or appropriate. The following is an analysis of an appropriate allocation of payments:

A mortgage, trust deed or contract for the sale of realty calling for installment payments usually contemplates that each installment include interest on the declining balance of the principal. Thus, each installment payment is first applied to accrued interest, with any balance applied to reduce the principal balance. If several installments are missed, particularly in the early part of the payment period, a single installment payment when made may not pay all of the accrued interest. Depending upon the size of the default, it may take several payments before there is any reduction of the principal balance.

The fact that in this case only $72,000 of the total debt of $96,000 is treated as secured should not change the manner in which payments are applied. The entire $72,000 must be treated as principal as of the date of the filing of the petition. Each postpetition payment received by the creditor, whether a payment to cure a default or

a regular monthly payment called for by the agreement, would first be applied to accrued interest on the $72,000 [2] starting from the petition date.[3]

## CONCLUSION

In conclusion, *Hougland* does not permit a change in the interest rate, amount of installment payment or curing of defaults. The court cannot ignore the express language of § 1322(b)(2) and 1322(b)(5) regarding claims secured by the principal residence. There are situations in bankruptcy when the rights of a creditor under a voluntary agreement are strictly enforceable. This is such a case.

The debtors' Fourth Amended Plan is disapproved. An appropriate order will be entered.

**2.** Section 502(b) provides that claims are determined as of the date of the filing of the petition. Therefore in this case where the allowed secured claim is fixed at $72,000, interest would commence accruing upon that amount as of the date of the petition.

**3.** Note that the creditor, though undersecured, is still entitled to post-petition, preconfirmation interest despite § 506(b). That subsection provides:

> To the extent that an allowed secured claim is secured by property the value of which * * * is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose. When an undersecured claim is divided into an allowed secured claim and an allowed unsecured claim under § 506(a), the allowed secured claim is exactly equal to the value of the collateral as of the date of the filing of the petition in bankruptcy. In such case there is no excess of value over the amount of the allowed secured claim. If § 506(b) were applied literally, then we would have to say that the holder of the allowed secured claim would not be entitled to interest between the date of the petition in bankruptcy and the date of confirmation. Such would appear to the court to be an absurd result.

There are two equally well-recognized rules of construction which can be applied to reconcile the apparent conflict between § 506(b) and § 1322(b)(2). One rule is that the court should try to resolve apparent conflicts so as to give meaning to all of the statutes. The other rule is that the specific will control the general.

If we attempt to simultaneously give effect to both § 506(b) and § 1322(b)(2), we then face the problem of whether depriving the creditor of interest on the allowed secured claim is or is not a "modification". No such problem arises if the rule is followed that the specific controls over the general. Under the later rule, disallowing interest under § 506(b) on undersecured claims would be the general rule. It would not apply, however, to the special situation described in § 1322(b)(2) concerning the debtor's principal residence.

Based on the above analysis, the contract rate of interest should accrue upon the sum of $72,000 from the date of the petition, despite section 506(b). Permitting the debtors to avoid payment of interest between the date of the petition and the date of confirmation would be an impermissible modification that would deprive the creditor of a right it enjoyed prior to bankruptcy. Nothing in *Hougland* suggests that depriving the creditor of the right to receive interest does not violate the "special protection" of § 1322(b)(2).