In re Carolyn WRIGHT, Debtor.

Carolyn WRIGHT, Plaintiff,

v.

C & S FAMILY CREDIT, INC., and LIB Properties, Ltd., Defendants.

Bankruptcy No. 89–14132.
Adv. No. 90–0111A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

May 7, 1991.

Marilyn S. Bright, Atlanta, Ga., for plaintiff.

David G. Crockett, Atlanta, Ga., for defendant C & S Family Credit.

Mark Weber, Atlanta, Ga., for defendant LIB Properties.

## ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

This adversary proceeding arises as a result of a motion for relief from the automatic stay filed by C & S Family Credit, Inc. ("C & S"). C & S holds a first priority security interest in Debtor's residence. LIB Properties, Ltd. ("LIB"), who holds a second priority security interest in Debtor's residence, intervened in the C & S motion for relief from stay. Debtor filed the above-styled adversary proceeding against both C & S and LIB to determine the validity, priority and extent of liens. The parties have filed motions for summary judgment.

The principal grounds for the C & S motion for relief from stay were that Debtor's plan proposed to modify the terms of the security agreement between Debtor and her secured creditors and that such modification is prohibited by 11 U.S.C. § 1322(b)(2). C & S contends that if Debtor has no equity in the Property, the lack of equity, together with the modification of the terms of the C & S loan, deprives C & S of adequate protection which, in turn, entitles C & S to relief from the stay. Debtor's plan proposes to modify the maturity date and interest rate on the obligation to C & S and proposes to bifurcate, pursuant to 11 U.S.C. § 506, the claim of C & S into a secured claim and an unsecured claim. At the time the C & S motion for relief from stay was filed, Debtor's plan also

proposed to modify LIB's claim and treat it as wholly unsecured pursuant to § 506.

After issue was joined in this adversary proceeding, Debtor filed an amendment to her Chapter 13 plan which appears to have removed the issues relating to LIB from consideration in this adversary proceeding. The amended plan provides that LIB's claim will be treated as long-term indebtedness and that LIB will be paid directly its normal contract payment amount until paid in full. Its arrearage will be cured through Debtor's plan. Although Debtor's amended plan does not purport to concede that LIB's claim is secured and cannot be modified, the amendment to the plan appears to moot the issues in this adversary proceeding which relate to LIB.[1] Accordingly, the motions for summary judgment as to LIB are denied without prejudice.

Debtor contends that the C & S claim may be modified because the C & S deed to secure debt (the "Security Deed") includes, in addition to a security interest in real property, security interests in personal property or in real property which is not part of Debtor's residence. Such security interests in property other than Debtor's principal residence, Debtor argues, removes the claim of C & S from the protection afforded by § 1322(b)(2).

The Security Deed contains language which describes the security interest in Debtor's residence as including

> all machinery, apparatus, equipment, fittings and fixtures, whether actually or constructively attached to said property and including all trade, domestic and ornamental fixtures, now or hereafter located in, upon or under said property or any part thereof and used or usable in connection with any present or future operation or enjoyment of said property and now owned or hereafter acquired by Grantor[.]

Debtor contends that, under Georgia law, the property described above could be within the classic definition of fixtures, by which definition fixtures are part of the real property, or could be personal property. Thus, Debtor argues, because some of the property in which C & S has a security interest may be personal property rather than real property, the entire security interest lies outside the protection of § 1322(b)(2).

Debtor also maintains that C & S obtained in the deed to secure debt a security interest in property which is not part of Debtor's residence, specifically:

> all rights, title and interest of Grantor in and to the minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter on said property or under or above the same or any part or parcel thereof[.]

Debtor argues that said minerals, flowers, shrubs, etc. are not part of Debtor's residence and thus constitute additional security which removes the C & S claim from protection under § 1322(b)(2).

Finally, Debtor asserts that C & S took a security interest in other property which is personal property, specifically, in the rents and profits of the Property and in returned, unearned and payable insurance premiums. The Security Deed grants C & S an interest in "the tenements, hereditaments, easements and appurtenances thereunto belonging or in any wise appertaining, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof[.]" (Emphasis supplied.) Pursuant to the provisions of the Security Deed between the parties, however, C & S is entitled to the rents and profits from the Property only after a default has occurred and C & S has taken actual or constructive possession of the Property. The Security Deed entitles C & S to the insurance premiums only upon foreclosure.

## DISCUSSION

■ Section 1322(b)(2) provides that a debtor's plan may:

---

1. The issue of whether the treatment of the claims of LIB and C & S under Debtor's plan meets the standards for confirmation is not an issue in this adversary proceeding and is not currently before this court. Nothing in this order should be construed as a finding on the confirmability of Debtor's Chapter 13 plan.

modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence,
. . .

Therefore, where a creditor's security interest encompasses personalty in addition to the debtor's principal residence, the anti-modification exception of § 1322(b)(2) will not apply. The case law concerning the circumstances under which a secured claim will be deemed "secured only by a security interest in real property that is the debtor's principal residence" is not uniform. The issue has not been decided by a bankruptcy court in this jurisdiction. Determinations from other jurisdictions are varied.

In the case of *Wilson v. Commonwealth Mortgage Co.*, 895 F.2d 123 (3rd Cir.1990), the collateral identified in the mortgage agreement between the debtor and the creditor included "not only the real estate but also 'any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises.'" The court rejected the creditor's argument that the additional security had no independent value, finding that the items of additional collateral had independent value. The court found the subjective intent of the parties to be irrelevant, repeating the bankruptcy court's admonition that if the creditor did not intend to obtain a secured interest in personal property, "it should delete such language from its agreements." *Id.* at 129.

In the case of *Kessler v. Homestead Savings Bank*, 99 B.R. 635 (Bankr.E.D.Pa. 1989), the mortgage included a security interest in "'plumbing, cooking, heating, lighting, fixtures, appliances' and other appurtenances to the realty as well as on the realty itself." The court held, relying on reasoning in its prior cases, that the security interest in personalty removed the mortgage from the protection of § 1322.

In the case of *In re Caster*, 77 B.R. 8 (Bankr.E.D.Pa.1987), the mortgage covered the real property of the debtor and "appliances, machinery, furniture and equipment (whether fixtures or not) of any nature

whatsoever now or hereafter installed." The court rejected the creditor's argument that the inclusion of the quoted clause was boilerplate language and that the mortgage instrument was insufficient under state law to create a perfected security interest in personalty. The court allowed modification of the secured claim.

In the case of *In re Stiles*, 74 B.R. 708 (Bankr.N.D.Ala.1987), the creditor had taken a security interest in Debtors' residence and in credit life insurance. The credit life insurance had been purchased at a cost of more than $2,500 from the lender and that cost had been included in the amount financed. The court seemed particularly offended by the interest rate charged by the lender, which exceeded 21%. The court held that the security interest in the credit life insurance was an additional security interest which resulted in modifiability of the secured claim.

On the other hand, in the case of *In re DiQuinzio*, 110 B.R. 628 (Bankr.D.R.I. 1990), the mortgagee's contingent interest in a credit life policy was not considered additional security which would remove the mortgage from § 1322(b)(2) protection. In the case of *In re Ross*, 107 B.R. 759 (Bankr.W.D.Okla.1989), the court found that boilerplate language in mortgage instruments referring to insurance, rents and profits, buildings, improvements, machinery, equipment and the like does not constitute "additional security" for the debt which would preclude application of § 1322(b)(2).

Finally, in the case of *In re Williams*, 109 B.R. 36 (Bankr.E.D.N.Y.1989), a security interest in a refrigerator, window shades and other fixtures was found to be so nominal in value as to have no significant meaning and should not have any effect in determining whether the mortgagee's interest could be modified under § 1322. The court opined that the true Congressional intent behind § 1322(b)(2) was to protect traditional mortgage lenders who provide long-term, purchase-money financing of residences, not for short term consumer financing.

### Personalty

■ Debtor's argument that a bare security interest in fixtures removes the security interest from the protection of § 1322(b)(2) is unpersuasive. In the instant case, the language of the Security Deed limits the security interest to property which is, in fact, a fixture under Georgia law but which under other circumstances might be personalty. The general rule in Georgia is that personal property which is actually or constructively attached to real property is considered part of the realty so that an interest arises in it under real estate law. *See*, O.C.G.A. § 11–9–313; O.C.G.A. § 44–1–2; *Consolidated Warehouse Co. v. Smith*, 55 Ga.App. 216, 189 S.E. 724 (1937).

■ The placement of the commas in the clause in the Security Deed (quoted above at page 841) establishes that C & S took a security interest only in "machinery, apparatus, equipment, fittings and fixtures" which were "actually or constructively attached" to the real property. The lack of a comma and the insertion of "and" before the word "including" shows that "all trade, domestic and ornamental fixtures ..." was merely further description of the first list of items (machinery, etc.) and was not intended to represent additional property in which C & S was acquiring a security interest. The interest which C & S acquired in fixtures is an interest in property which is part of the real property. It does not represent a secured claim in property other than Debtor's principal residence.

The language in the Security Deed is discernibly different from that in the *Wilson*, *Caster* and *Kessler* cases cited above. The security interest taken by the creditors in *Wilson* and *Caster* clearly applied to the property described irrespective of whether that property was a fixture. In *Kessler*, the security agreement designated certain types of personal property, which would probably not otherwise be considered fixtures, to be fixtures and then created a

security interest in them. Such clauses exhibit the kind of overreaching and adhesion contracts which Congress addressed in § 1322(b)(2). The security agreement in the instant case is not such an example of overreaching.

■ Even if the property described in the Security Deed existed and were determined to include personalty which was not a fixture because it was not actually or constructively attached to the real property so as to become part of the real property, then no security interest in the property arose under the deed to secure debt. If no security interest arose under the Security Deed, Defendant's secured claim is unperfected [2] and, therefore, unenforceable pursuant to 11 U.S.C. § 544 and § 545. As a result, Defendant would not be the holder of "a claim secured" by a security interest in property other than Debtor's principal residence. The use in § 1322(b)(2) of the phrases "holders of secured claims" and "other than a claim secured only by" (emphasis added), when read together with other applicable sections of the Bankruptcy Code, including § 101(4) and (33), § 544 and § 545, establishes that only properly perfected secured claims will be considered relevant in determining whether the § 1322(b)(2) exception applies.

■ Debtor also argues that the provision which accords C & S rights to rents and profits removes the secured claim of C & S from the § 1322(b)(2) safeguards. The rights of C & S to rents and profits, however, are incorporeal hereditaments, which are part of the possessory bundle of rights known as seizin and are, therefore, inextricably bound to the real property itself. *See*, Pindar, *Georgia Real Estate Law & Procedure*, Third Edition (1986), § 21–14.2; *Stevens v. Worrill*, 137 Ga. 255, 73 S.E. 366 (1911). The Uniform Commercial Code specifically excepts rents and profits from the requirements of Article Nine. O.C.G.A. § 11–9–104(h).

---

**2.** It is undisputed that Defendant did not attempt to perfect an interest in fixtures by filing pursuant to O.C.G.A. § 11–9–313.

Further, the provisions of the security deed state that the right of C & S to collect rents and profits arises only upon Debtor's default. The rights of C & S to collect rents and profits would mature following default and upon "entry upon the property" by C & S. "Entry upon the property" is a term of art which describes the contractual right of a creditor to take constructive possession of property after a default.[3] Thus, the rights of C & S to rents and profits, reflected by the language of the Security Deed, do not constitute separate items of collateral.[4]

The case of *In re Ramirez*, 62 B.R. 668 (Bankr.S.D.Cal.1986), upon which Debtor relies in support of her argument that a security interest which includes an interest in rents and profits removes the claim from the exception in § 1322(b)(2), is inapposite. In *Ramirez*, the debtor's real property was divided into two parcels, one of which she rented, resulting in a finding by the bankruptcy court that the claim was not "secured only by a security interest in real property that is the debtor's principal residence[.]" In the instant case, it is undisputed that the real property described in the Security Deed is used only as Debtor's residence. Therefore, Debtor's argument as to rents and profits is without merit.

■ Debtor also argues that the provision which sets forth the rights of C & S to returned, unearned and payable insurance premiums upon foreclosure removes the C & S claim from the exception in § 1322(b)(2). Although that provision may modify the right of C & S to the premiums upon foreclosure, *see*, Pindar, *Georgia Real Estate Law & Procedure*, Third Edition (1986), § 21–14.1; *Jackson v. Citizen's Trust Bank*, 133 Ga.App. 371, 211 S.E.2d 17 (1974), the provision remains a remedy

to be exercised upon foreclosure. The rights of C & S to returned, unearned and payable insurance premiums are not included in the description of the collateral in the habendum clause of the Security Deed. Thus, the rights to returned, unearned and payable insurance premiums do not constitute additional security for the debt in the common sense usage of the term in § 1322(b)(2).

■ Finally, Debtor argues that the minerals, flowers, shrubs, trees, etc. are not Debtor's residence and thus preclude application of § 1322(b)(2) to prevent modification. Case law on this particular issue appears nonexistent, perhaps because Debtor's argument relies on a definition of the term "residence" which is too narrow. The definitions of "residence" in Black's Law Dictionary and in Webster's Third New International Dictionary, Unabridged, establish that "residence" is not necessarily equivalent to "house." The argument that a security interest in the tree which might be in Debtor's front yard is a security interest in something other than Debtor's residence in insupportable. An oil field, coal mine or granite quarry which happens to have a house on it, for example, is readily distinguishable from a homeplace around which flowers and shrubs grow, and under Georgia law, such minerals must exist or be reserved in order to be personalty. See generally, *Pindar*, § 9–1 et seq. at 395 (3d ed., 1986). Accordingly, Debtor's arguments that the secured claim of C & S includes a security interest in property other than real estate or other than Debtor's residence are without merit.

### Bifurcation

■ With respect to Debtor's argument that the C & S claim may be bifurcated

---

3. "Entry upon the property" was originally an alternative remedy to foreclosure, in which the mortgagee became, upon entry, a "mortgagee in possession." When the mortgagee chose entry upon the property, however, a statutory 10–year right of redemption inured to Debtor's benefit. A lender may circumvent the statutory ten-year right of redemption by inserting the conjunctive "and" rather than a disjunctive such as "or" between the provisions in the deed to secure debt allowing entry upon the property and al-

lowing foreclosure. *Livingston v. Hirsch*, 172 Ga. 854, 159 S.E. 253 (1931).

4. Recent cases of the U.S. Supreme Court and the Eleventh Circuit evidence a growing trend of statutory construction of the Bankruptcy Code which favors, insofar as possible, consistency with non-bankruptcy law. *See, GMAC v. Busenlehner*, 918 F.2d 928 (11th Cir.1990), *reh den, en banc*, 924 F.2d 1067 (11th Cir.1991).

pursuant to § 506, the fair market value of the Property has not been stipulated by the parties and has not been determined from evidence presented to the court. Debtor and C & S, however, contend the legal issue concerning whether the C & S claim may be bifurcated pursuant to § 506(a) is ripe and may be decided prior to valuation of the Property. The preliminary valuations for the Property by the parties appear to be very close to the amount of the C & S claim. Obviously, if the claim of C & S is fully secured, no issue as to bifurcation remains. On the other hand, a valuation hearing would be a useless exercise if the § 506 bifurcation issue is decided against Debtor. It would be wasteful and illogical to require the parties to go to the expense of presenting appraisal evidence concerning value when value may be rendered irrelevant by the determination of a legal issue which the parties have already fully briefed. Therefore, the legal issue concerning whether § 1322(b)(2) precludes bifurcation of the C & S claim pursuant to § 506, if C & S is undersecured, will be addressed.

■ Application of § 506(a) determines the secured status of a claim. Section 506 provides, in pertinent part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

Where the value of the collateral is less than the amount of the creditor's claim, that claim is deemed to be undersecured and the secured and unsecured portions may receive different treatment in Debtor's plan.

■ As quoted above, pursuant to § 1322(b)(2), a Chapter 13 debtor may:

modify the rights of holders of secured claims, other than a claim secured only

by a security interest in real property that is the debtor's principal residence. The interaction of § 506(a) and the anti-modification provision of § 1322(b)(2) has generated a significant amount of litigation because the language of § 1322(b)(2) may be read to mean that bifurcating a claim under § 506(a), i.e., splitting the claim into a secured portion and an unsecured portion, may be an impermissible modification of that claim if it qualifies for § 1322(b)(2) protection.

Courts are divided on whether Chapter 13 debtors may bifurcate claims which would be protected from modification were it not for a decrease in the value of the mortgaged property. Regardless of the various courts' conclusions, however, the courts commonly rely upon the legislative history of § 1322(b)(2) to determine whether bifurcation is permissible under § 506(a) or a prohibited modification under § 1322(b)(2). As the court in *In re Harris* noted:

The legislative history of § 1322(b)(2) has been used by different courts to render contrary results on this issue. For example, in *In re Neal* [10 B.R. 535 (Bankr. S.D. Ohio 1981)], the court, after extensive study of the legislative history, held that 1322(b)(2) applied only to claims wholly secured by the principal residence. 10 B.R. at 538–40. To the contrary, the court in *In re Hynson* [66 B.R. 246 (Bankr.D.N.J.1986)], utilizing the same history, held that application of the cramdown provisions to claims secured solely by the debtor's principal residence would be at odds with the clear intent of Congress. 66 B.R. at 252–53.

94 B.R. 832, 835 (Bankr.D.N.J.1989). The undersigned can demonstrate no conclusive or definitive interpretation of the legislative history. Therefore, in light of the legislative history's chameleon-like ability to support contrary interpretations of § 1322(b)(2), additional analysis of Congressional intent, so ambiguously expressed, would be unproductive.[5]

---

5. *See, Blanchard v. Bergeron,* 489 U.S. 87, 97, 109 S.Ct. 939, 946, 103 L.Ed.2d 67 (1989) (Scalia, J., concurring).

A number of courts have refused to confirm Chapter 13 plans where the plans proposed to bifurcate secured claims covered by § 1322(b)(2).[6] The courts which refuse to permit bifurcation base their decisions on two primary grounds: (a) the rules of statutory construction require, in situations where a statute creates a conflict, that specific provisions (i.e., § 1322(b)(2)) override general provisions (i.e., § 506); or (b) the purpose of § 1322(b)(2) would be frustrated by permitting § 506 to bifurcate a creditor's claim where that claim is secured by property which is the debtor's principal residence. *In re Smith,* 63 B.R. 15 (Bankr. D.N.J.1986); *In re Mahaner,* 34 B.R. 308 (Bankr.W.D.N.Y.1983). Thus, § 1322(b)(2) is held to prohibit modification of secured debt into secured and unsecured portions regardless of the value of the collateral.

In contrast, the circuit courts which have addressed the issue have determined that § 1322(b)(2) and § 506 must be read together and have permitted bifurcation of the claims. *Hougland v. Lomas & Nettleton Co.,* 886 F.2d 1182 (9th Cir.1989); *Wilson v. Commonwealth Mortgage,* 895 F.2d 123 (3rd Cir.1990); *Eastland Mortgage Co. v. Hart,* 923 F.2d 1410 (10th Cir.1991).[7]

In the *Hougland* case, the debtors obtained a loan secured by a lien on real property which was their principal residence through a state veteran's assistance program. At the time of their Chapter 13 filing, the value of their property was $47,240.00 while the total balance due on the loan was $51,090.78. Consequently, Debtor sought to modify the amount owed on the loan by bifurcating the loan into a secured claim equal to the actual value of the residence and an unsecured claim for the remainder.

The bankruptcy court refused to permit bifurcation. The district court reversed. The Ninth Circuit affirmed the district court, permitting bifurcation because it found that § 506(a) controlled the definition of secured claim throughout Chapter 13, and thus in § 1322(b)(2). As a result, the use of the term "secured claim" in § 1322(b)(2) could only mean a claim to the extent it was secured by collateral, as specified by § 506(a). In reaching this determination, the court in *Hougland* found that a secured residential real estate claim will have special protection under § 1322(b)(2) after § 506 has been applied to determine the extent of the secured claim.

In the *Wilson* case from the Third Circuit, the Chapter 13 debtors sought to limit the creditor's claim under their mortgage to the fair market value of the collateral. The bankruptcy court allowed debtor to modify the creditor's claim. The district court and the circuit court affirmed the bankruptcy court. The circuit court adopted the district court's reading of § 506(a) and § 1322(b)(2) that a secured claim for purposes of § 1322(b)(2) means what § 506(a) says it means: that portion of the claim which does not exceed the value of the collateral. The circuit court found that proper statutory construction of § 1322(b)(2) permits bifurcation of the claim. The language of § 1322(b)(2) provides that, with one exception, a Chapter 13 plan may modify the rights not only of holders of unsecured claims, but also of holders of secured claims. The exception appears in the "other than" clause, provid-

---

6. *In re Chavez,* 117 B.R. 733 (Bankr.S.D.Fla. 1990); *In re Sauber,* 115 B.R. 197 (Bankr.D. Minn.1990); *In re Schum,* 112 B.R. 159 (Bankr. N.D.Tex.1990); *In re Kaczmarczyk,* 107 B.R. 200 (Bankr.D.Neb.1989); *Roberts v. Skiba,* 99 B.R. 653 (Bankr.W.D.Pa.1989); *In re Russell,* 93 B.R. 703 (Bankr.D.N.D.1988), *aff'd, In re Hougland,* 886 F.2d 1182 (9th Cir.1989); *In re Hynson,* 66 B.R. 246 (Bankr.D.N.J.1986); *In re Catlin,* 81 B.R. 522 (Bankr.D.Minn.1987); *In re Hemsing,* 75 B.R. 689 (Bankr.D.Mont.1987); *In re Simpkins,* 16 B.R. 956 (Bankr.E.D.Tenn.1982); *In re Moran,* 121 B.R. 879 (Bankr.E.D.Okla.1990); *In re Christiansen,* 121 B.R. 63 (Bankr.D.Col.1990); *In re Mitchell,* 125 B.R. 5 (Bankr.D.N.H.1991).

7. *See also, In re Hayes,* 111 B.R. 924 (Bankr.D. Or.1990); *In re Marshall,* 111 B.R. 325 (Bankr.D. Mont.1990); *In re Honett,* 116 B.R. 495 (Bankr. E.D.Tex.1990); *In re Harris,* 94 B.R. 832 (D.N.J. 1989); *Kessler v. Homestead Savings,* 99 B.R. 635 (Bankr.E.D.Pa.1989); *Caster v. U.S. Department of Housing and Urban Development,* 77 B.R. 8 (Bankr.E.D.Pa.1987); *Bellamy v. Federal Home Loan Mortgage Corp.,* 122 B.R. 856 (Bankr.D.Conn.1991); *McNair v. Chrysler First Financial Services Corp.,* 115 B.R. 520 (Bankr.E. D.Va.1990).

ing for modification of secured claims "other than a claim secured only by a security interest in real property that is the debtor's principal residence." Because the "other than" phrase is best read to refer to secured claims, the "other than" phrase should be read to limit modification only to that portion of the claim that is secured.

Finally, the Tenth Circuit determined in the *Hart* case that bifurcation is permissible. *Eastland Mortgage Co. v. Hart*, 923 F.2d 1410 (10th Cir.1991). In that case, the mortgage had an amount due of $55,000 but the stipulated fair market value of the property was $30,000. The bankruptcy court approved the bifurcation of the claim into secured and unsecured portions. The district court, however, reversed, holding that § 1322(b)(2) prevented bifurcation. The Tenth Circuit reversed the district court.

This most recent circuit court decision on the issue provides a helpful review of the legislative history and of the split of decisions and concludes that the views of the Ninth and Third Circuits are the more persuasive. The court bases its decision in part on the "plain language" of § 1322(b)(2) which contains no suggestion that the definition of secured claim contained in § 506(a) should be ignored to protect the unsecured portion of an undersecured home mortgage.

The Eleventh Circuit has not addressed the Chapter 13 bifurcation issue. Additionally, it appears that only one bankruptcy court within the Eleventh Circuit has published a decision on the issue. *In re Chavez*, 117 B.R. 733 (Bankr.S.D.Fla.1990). In the *Chavez* case, the bankruptcy court reasoned that § 1322(b)(5) contained the only permissible modifications of a claim secured only by property which is the debtors' principal residence; accordingly, it refused to permit bifurcation of the mortgagees' claim to reflect the value of the debtors' homestead.

In *Folendore v. SBA*, 862 F.2d 1537 (11th Cir.1989), however, the Eleventh Cir-

cuit has applied § 506(a) to a lienholder's claim in a Chapter 7 case[8] in the same manner in which it would be applied in a Chapter 13 case seeking bifurcation. In *Folendore*, the Eleventh Circuit held that a debtor may avoid, pursuant to § 506(d), a lien which is unsecured pursuant to § 506(a) even if that claim has not been disallowed and even though the debtor has no equity in the property. The court relied heavily upon the plain language of the statute and upon the fresh start policy of the Bankruptcy Code. As *Folendore* was a Chapter 7 case, the Eleventh Circuit has not had the opportunity to apply § 506(a) in conjunction with § 1322(b)(2). *Folendore* is not inconsistent with *Hougland, Wilson* and *Hart*.

The undersigned finds the decisions in the *Hougland, Wilson* and *Hart* cases persuasive. Congress certainly knew how to exclude application, especially in Chapter 13, of sections included in Chapter 1, 3 and 5 of the Bankruptcy Code. 11 U.S.C. § 103. Section 1322(b)(2) does not, however, expressly exclude application of § 506. Additionally, application of § 506 to bifurcate a claim secured by a debtor's residence does not negate application of the anti-modification provisions of § 1322(b)(2). Bifurcation results in modification of the principal amount of the secured claim. Other rights of the holder of the secured claim remain and are protected by § 1322(b)(2). *Hougland*, 886 F.2d at 1185.

A recent decision which addresses this post-bifurcation modification issue is *In re Hayes*, 111 B.R. 924 (Bankr.D.Or.1990). In *Hayes*, after bifurcation of a creditor's claim, the debtor sought to reduce the amount of the monthly payments to the creditor to reflect the lower balance due on the secured debt. The *Hayes* court recognized that although the *Hougland* decision established that bifurcation under 506(a) is not an impermissible modification under § 1322(b)(2), *Hougland* was "not instructive on how to structure payments after avoidance of the lien on the unsecured por-

---

**8.** Although the Eleventh Circuit opinion does not identify *Folendore* as a Chapter 7 case, the district court opinion from which the appeal to the Eleventh Circuit came did identify the case as a Chapter 7 case. *See, Folendore v. U.S.*, 85 B.R. 180 (M.D.Ga.1988).

tion." *Hayes* at 925. The *Hayes* court then held that the proposed reduction in monthly payments was an impermissible modification opining that the "special protection" language of 1322(b)(2) would be superfluous if debtors could modify the rights of holders of secured claims secured only by a security interest in the debtor's principal residence. *See also, In re Honett*, 116 B.R. 495 (Bankr.E.D.Tex.1990). (In *Honett*, the court followed *Hayes* and explained that certain "particulars of the mortgage instrument cannot be affected" following bifurcation, "particularly, the interest rate or monthly payment amount").

The *Hayes* court did, however, realize that some modification of the terms of the mortgage was necessary given the reduced amount of secured debt after the § 506(a) bifurcation. The *Hayes'* court's solution was to find that shortening the maturity date of the debt was not an impermissible modification because acceleration of the debt's maturity date was the natural consequence of the debtor's voluntary decision to bifurcate the claim. The court, therefore, held that even after a permissible bifurcation, a debtor could not change the monthly payments or interest rates on a claim secured only by a security interest in real property which serves as the debtor's principal residence.

Applying to the present case the reasoning of *Hayes* that some modification of the terms of the mortgage will be necessary, Debtor's plan to modify the terms of the mortgage agreement with C & S must be deferred. If a valuation hearing determines that C & S is undersecured and if Debtor continues to seek bifurcation, Debtor's plan must be modified. Following valuation hearings and determination of the fair market value of the Property, the parties will be permitted to argue whether, in accord with the decision in the *Hayes* case, only the maturity date of the mortgage agreement may be modified, or whether only the principal amount payable is modified, the interest rate and term remaining

the same thus lowering the monthly payment.

■ In connection with the valuation issue, C & S argues that Debtor should be estopped from arguing or offering evidence that the fair market value of the Property is less than the amount represented as fair market value at the time the loan was made to Debtor by C & S. In her loan application, Debtor alleged a value of $70,-000. C & S obtained a professional appraisal of the Property which concluded fair market value to be $45,000. The amount loaned to Debtor by C & S was $22,105.39.[9] The evidence in support of estoppel argument of C & S presently before the court is unpersuasive; the argument may, however, be renewed at the valuation hearings.

■ C & S also argues that if the fair market value of the Property is found to be less than or equal to the amount of the C & S claim, then the case of *In re Thomas*, 883 F.2d 991 (11th Cir.1989), applies to entitle C & S to relief from the automatic stay. The *Thomas* case concerned a mobile home and a title retention contract. The *Thomas* case did not concern the type of classic residential real estate transaction at issue in the instant case. Thus, the principles set forth in the *Thomas* case are inapplicable to the facts of this case. Accordingly, it is hereby

ORDERED that Debtor's motion for summary judgment and LIB's motion for summary judgment are denied. It is further

ORDERED that the motions for summary judgment of Debtor and C & S are granted in part and denied in part: If subsequent valuation hearings show C & S to be undersecured, Debtor shall be permitted to employ 11 U.S.C. § 506 to bifurcate the C & S claim. If such bifurcation occurs, however, C & S continues to be entitled to the protection of § 1322(b)(2) on the secured portion of the debt, as described above. It is further

---

**9.** The amount C & S loaned to Debtor is 61.4% of 80% of C & S's appraisal of the fair market value of the Property. [$22,105 ÷ (80% × $45,-000)]

ORDERED that the C & S motion for relief from stay is denied. It is further

ORDERED that, within 30 days of the date of entry of this order, the parties shall file a list of witnesses and exhibits which they anticipate will be presented at a hearing on valuation of the Property and a joint estimate as to the amount of time the parties will require to present valuation evidence and argument. Thereafter a hearing will be scheduled.

IT IS SO ORDERED.