## HOMEOWNERS FUNDING COMPANY, Appellant,

v.

## Kenneth W. SKINNER and Mary K. Skinner, Appellees.

### No. 91–66–CIV–5–F.

United States District Court, E.D. North Carolina, Raleigh Division.

May 20, 1991.

Theodore Adelbert Nodell, Jr., Raleigh, N.C., for Homeowners Funding.

William E. Brewer, Jr., Raleigh, N.C., for Kenneth and Mary Skinner.

### ORDER

JAMES C. FOX, Chief Judge.

### STATEMENT OF THE CASE

This is an appeal from an Order of the United States Bankruptcy Court for the Eastern District of North Carolina denying the creditor Appellant's objection to the confirmation of debtor Appellees' Chapter 13 Plan (hereinafter, the "Plan") and motion to dismiss said Plan.

Appellant has filed a brief asking that the Bankruptcy Judge's November 20, 1990, Order Regarding Confirmation of the

Debtors' Plan and Order Denying Motion to Dismiss, be reversed. Appellees have filed a brief in response, and Appellant has advised the court that no reply brief will be filed. Accordingly, this appeal is now ripe for ruling.

## STATEMENT OF THE FACTS

On November 13, 1983, Appellees financed the purchase of a new 1984 Fleetwood Springhill mobile home. The contract of sale provided for the financing of $26,-939.94 at 14.6% per annum. Monthly payments were to be $372.06, beginning January 1, 1984, and continuing for 180 consecutive months. Appellant holds a perfected purchase money security interest in the home by virtue of an assignment of the underlying Retail Installment Contract and Security Agreement, and the notation as first lienholder on the appropriate Certificate of Title. When the Appellees became delinquent in their payments, Appellant filed suit in state court for the loan balance and possession of the mobile home. However, on June 11, 1990, during the pendency of that action, Appellees filed a petition for relief under Chapter 13 of the United States Bankruptcy Code and listed the Appellant as a secured creditor. On July 9, 1990, Appellant filed a Proof of Claim in the amount of $24,391.27, which includes a prepetition arrearage claim of $3,436.34. There appears to be no dispute among the parties as to the fact that the mobile home at this time was only worth approximately $15,500.00.

After several modifications, the Appellees' Plan was accepted by the Bankruptcy court, and it provided for two claims: a secured claim of $15,500.00, to be paid outside the Plan in monthly installments of $372.06 at the annual contract interest rate of 14.6% per annum, and an unsecured claim of $8,891.27. The Plan also provided for an arrearage claim which will be paid through the Plan in 24 monthly installments of $144.00. Both the $372.06 payment and the $144.00 arrearage payment will be applied to the satisfaction of the secured debt. Once the $15,500.00 secured claim, plus interest at the annual contract rate of 14.6% per annum is satisfied, the

Appellees would be entitled to the mobile home free and clear of Appellant's lien. The unsecured claim will be paid *pro rata* with the other unsecured creditors.

## DISCUSSION

The essential question raised by this appeal is whether, in a Chapter 13 bankruptcy action, the claim of a creditor who has a security interest in a debtor's property, the value of which is less than the amount owed the creditor, may be divided into a secured claim and an unsecured claim with the unsecured claim paid through the Plan and the secured claim paid outside the Plan over a period that extends beyond the term of the Plan. The question presented in this appeal is thus one of law, which is reviewed by this court *de novo*, and the Bankruptcy Judge's ruling may be overturned if it is "contrary to law." *Morter v. Farm Credit Services*, 110 B.R. 390, 393 (N.D.Ind.1990).

The resolution of this issue entails the application of 11 U.S.C. §§ 506(a), 1322(b)(2) and (b)(5), and 1325(a)(5).

The court begins its analysis with Section 506(a) and the effect it has on the term "secured claim" as it is used in Sections 1322 and 1325. Section 506(a) provides in pertinent part that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent the value of such creditor's interest ... is less than the amount of such allowed claim.

■ Section 506(a) takes a creditor's entire claim and defines which portion is secured and which portion is unsecured. This process of defining the secured claim by reference to the value of the collateral is called "bifurcation." When a provision in Chapter 13 uses the term "secured claim," it means a secured claim as defined by Section 506(a). *See, e.g., In Re Hougland*, 886 F.2d 1182, 1183 (9th Cir.1989) ("It should first be noted that it is clear that Section 506(a) applies to Chapter 13

proceedings. *See* § 103(a). There is, therefore, no reason to believe that the phrases 'secured claim' and 'unsecured claim' in section 1322(b)(2) have any meaning other than those given to them by section 506(a).")

In the instant case, by application of Section 506(a), the sum of $24,391.27 which Appellees owed Appellant was divided into an allowable secured claim of $15,500.00 and an allowable unsecured claim of $8,891.27. With Appellant's claims defined, the court's analysis turns to the applicable provisions of Chapter 13 to ascertain the permissible manner in which the secured claim can be treated. The pertinent provisions of Chapter 13 are as follows:

**11 U.S.C. Section 1322. Contents of plan**

(b) Subject to subsections (a) and (c) of this section, the plan may—

 . . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

 . . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

 . . . .

(c) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

**11 U.S.C. Section 1325. Confirmation of plan**

(a) Except as provided in subsection (b), the court shall confirm a plan if—

 . . . .

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan; [or]

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder. . . .

Appellant confuses the bifurcation of a claim pursuant to Section 506(a) with the so-called "cramdown" of a claim pursuant to Section 1325(a)(5)(B). On page 3 of its brief, Appellant states: "It ['cramdown'] entails bifurcating a creditor's claim into a secured portion equal to the value of the collateral, and treating the remaining portion of the claim as unsecured." This is an incorrect definition of the term "cramdown." The Fourth Circuit explained the term in *Landmark Financial Services v. Hall*, 918 F.2d 1150 (4th Cir.1990):

In a cramdown, the Code requires that the secured creditor receive the present value of his secured claim within the life of the plan. This provision, plus the additional requirement that the creditor retain its lien on the collateral, is the means by which the Code compensates secured creditors for any modifications of their rights. The present value of § 1325 is designed to factor in the time value of the deferred payments in order to assure full satisfaction of secured claims.

*Id.* at 1153–54.

The confusion of the two provisions is understandable because they often are used in tandem. It is not unusual for a debtor to define a creditor's allowable secured claim by reference to the value of its security pursuant to Section 506(a), and then "cramdown" the claim pursuant to Section 1325(a)(5)(B) by paying the present value thereof through the plan. However, they are distinct and separate provisions. Not every bifurcated secured claim is

"crammed down," and not every "crammed down" secured claim was bifurcated.

Appellant's confusion is further manifested by the fact that it cites *Landmark Financial Services* in support of its argument. In *Landmark,* the debtors were eight payments in arrears on a second mortgage debt secured by their residence. The confirmed Chapter 13 plan provided for curing of the pre-petition arrearages through the plan without interest, and the resumption of payment of post petition payments outside the plan. The sole issue before the Fourth Circuit was whether the plan could be confirmed if the plan does not provide for the payment of interest on pre-petition arrearages being cured pursuant to Section 1322(b)(5). In determining that issue, the Fourth Circuit distinguished the cure/maintenance-of-payments remedy of Section 1322(b)(5) from the "cramdown" remedy available through Section 1325(a)(5)(B). The court held that curing a default and maintaining payments is *not* a modification of the creditor's rights, and therefore the "cramdown" provisions of Section 1325(a)(5) do not come into play. The case did not involve the payment of an indebtedness which had been bifurcated pursuant to 11 U.S.C. Section 506(a).

■ The Third and Ninth Circuit Courts of Appeals have considered the issue of the payment of a long term secured debt that has been bifurcated. *See Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3d Cir.1990); *In Re Hougland,* 886 F.2d 1182 (9th Cir.1989).[1] In both of these cases the debtors had a long-term residential mortgage debt which exceeded the value of the residence. The precise issue before each court was whether Section 1322(b)(2)'s prohibition against modification of a secured claim secured solely by real property which is the debtor's principal residence forbids bifurcating a long term mortgage debt into secured and unsecured claims pursuant to Section 506(a) and then modifying the unsecured claim. In essence, the issue was whether bifurcation under Section 506(a) constitutes modification as defined in Section 1322(b)(2). Both courts held that bifurcation is *not* modification of the creditor's secured claim. Since in each case the secured debt is less than the contractual debt, the courts implicitly held that some alteration in the payment of the long term debt was permissible under the provisions of Chapter 13. However, the courts provided no guidance as to what form of modification was permissible.

In the case of *In Re Hayes,* 111 B.R. 924 (Bkrtcy.D.Or.1990), the Bankruptcy Court was faced with the task of applying flesh to the bare bones holding in *Hougland.* In *Hayes,* the debtor's residence was worth $72,000.00 and was collateral for a $96,-000.00 indebtedness to Great Western Bank. The court held that Great Western had a secured claim of $72,000.00 and an unsecured claim of $24,000.00, observing that the Ninth Circuit had held in *Hougland* "that dividing the claim into an allowed secured claim and an allowed unsecured claim under § 506(b) [sic] is not a modification of the allowed secured claim." *Hayes,* 111 B.R. at 927. The court then turned to the payments on the secured debt, and noted that:

> under the *Hougland* ruling, some term of the agreement *must* be changed if the debt is not going to be repaid in full. When the claim is divided into an allowed secured claim and an allowed unsecured claim, the amount to be paid on the secured claim will be less than the debt contemplated by the agreement. There necessarily must be some additional change from the terms of the agreement since following it in all respects would result in payment of the entire debt. If the monthly payment and interest rate remain the same, and if the debtors must cure defaults as provided in § 1322(b)(5), then obviously the maturity date will be shortened.

*Id.*

The court held that Section 1322(b)(5) provides the only payment option available

---

**1.** A case from a bankruptcy court in the Fourth Circuit in accord with these cases is In Re Gadson, 114 B.R. 453 (Bkrtcy.E.D.Va.1990).

to debtors who desire to retain a real property residence which is the sole security for a claim, and that therefore the debtors must cure all defaults and maintain their payments. As to the maintenance of payments, the court ruled that the prohibition of any modification of the secured claim contained in Section 1322(b)(2) prevents any change in the monthly payment or the interest rate. The court directed that the principal amount of the secured claim would be equal to the value of the collateral and would accrue interest at the contract rate. Finally, the court provided that the regular monthly payments outside the plan and payments on the arrearage through the plan are to be applied to accrued interest and then principal until the principal and interest are paid.

Even though the debtors in this case did have other options available to them, they sought and obtained confirmation of a plan that meets all the particulars set forth in *Hayes*.[2]

The only argument that Appellant advances in this case that has not been explicitly decided in the cases cited *supra*, is its argument that the confirmation of this Plan violates Section 1325(a)(5). Appellant argues that all Chapter 13 claims in which a creditor's claim has been bifurcated into secured and unsecured claims must either be accepted by the creditor, provide for surrender of the collateral to the creditor, or provide for payment in full of the present value allowed the secured claim during the term of the Plan. Appellant's argument was implicitly rejected in the *Hougland* line of cases, because the payments on the long-term secured debts in those cases necessarily exceeded the maximum limit of any confirmable plan.

■ Appellant's argument can be explicitly rejected for two reasons. First, Section 1325(a)(5) is not applicable in this case because, by its express terms, it applies only to a "secured claim provided for by the plan." When a debtor bifurcates an unsecured claim, cures the arrearages, and maintains the regular monthly payments until the principal and accrued interest on the secured portion has been paid, that secured claim has not been "provided for by the plan." Neither the bifurcation of the debt nor the curing of default constitutes a modification of the secured debt. *In Re Hougland*, 886 F.2d 1182 (bifurcation); *Landmark Financial Services v. Hall*, 918 F.2d 1150 (curing default). The "cramdown" section is irrelevant when the creditor's rights have not been modified. *Landmark Financial Services v. Hall*, 918 F.2d 1150.

■ Second, even if Section 1325(a)(5) is deemed applicable, the requirements of Section 1325(a)(5)(B) have been met. The payments provided for in the Bankruptcy Court's order meet the present value test of Section 1325(a)(5)(B)(ii). The debtors' allowed secured claim is $15,500.00. Said order sets the principal amount of Appellant's allowable secured claim at $15,500.00. The claim is to be paid by payments of $144.00 per month for 24 months through the Plan to cure the default and payments of $372.06 per month outside the Plan. The order requires that the principal accrue interest at the contract rate of 14.6%, that the payments be applied first to interest and then to principal,[3] and that payments of $372.06 continue until the principal and accrued interest are paid. The order also provides for extinguishment

---

2. The collateral in this case is the debtors' mobile home residence. The mobile home is *personal property,* not real property, and therefore the prohibition against modification contained in Section 1322(b)(2) does not apply. Since the court in *Hayes* grounds its ruling that neither the interest rate nor the monthly payment can be changed on the prohibition against modification contained in Section 1322(b)(2), the Bankruptcy Court in this case may have had more latitude in formulating the terms of the payments on the secured debt. However, the debt-

ors did not cross appeal, and thus that issue is not before the court.

3. The combination of 24 payments of $144.00 inside the Plan plus payments of $372.06 outside the Plan will amortize the claim in 44 months. However, even if the time needed to amortize the debt exceeded 60 months, the Plan would not violate 11 U.S.C. § 1322(c) because the 60 month limit on payments provided for by that Section limits payments through the Plan and not payments maintained *outside* the Plan pursuant to Section 1322(b)(5).

of the lien only upon satisfaction of the debt, and thus the requirement of Section 1325(a)(5)(B)(i) has been met. Since 14.6% per annum is a more than adequate discount rate, the present value of these payments mandated by the confirmation order equals the amount of the allowed secured claim as mandated by Section 1325(a)(5)(B)(ii).

## CONCLUSION

The court hereby AFFIRMS the decision of the Bankruptcy Judge, filed November 20, 1990, in which the Bankruptcy Judge denied Appellant's objection to confirmation of the Plan and motion to dismiss the Plan, and REMANDS the case to the Bankruptcy Court for the Eastern District of North Carolina for entry of an order confirming the debtors' Plan.

SO ORDERED.