**In re Jimmie BELLAMY and Cynthia Bellamy, Debtors.**

**Bankruptcy No. 5–90–00688.**

United States Bankruptcy Court, D. Connecticut.

April 19, 1991.

---

Ira B. Charmoy, George W. Derbyshire, Law Offices of Ira B. Charmoy, Bridgeport, Conn., for debtors.

Carla E. Craig, Hertzog, Calamari & Gleason, New York City, Dean S. Cooper, Associate Gen. Counsel, Federal Home Loan Mortg. Corp., Reston, Va., Richard A. Roberts, Fazzone, Nuzzo & Baille, P.C., Cheshire, Conn., for Federal Home Loan Mortg. Corp.

**1.** For the text of § 1322(b)(2), *see infra*

## MEMORANDUM AND ORDER ON CONFIRMATION OF CHAPTER 13 PLAN

ALAN H.W. SHIFF, Bankruptcy Judge.

The debtor seeks confirmation of its chapter 13 plan. For the reasons that follow, confirmation is denied.

### I.

On May 24, 1987, the debtors purchased as their principal residence real property located at 135 Clover Hill Avenue in Bridgeport, Connecticut (the "residence"). To finance the purchase, the debtors gave Comfed Mortgage Co., Inc. a $133,000.00 promissory note (the "Note"), payable in monthly installments of $1,329.79 during its thirty year term. The Note was secured only [1] by a first mortgage on the residence (the "Mortgage"). The Note and Mortgage provided that in the event of a default, the holder had the right to accelerate the due date of the principal balance and interest owed. *See* ¶¶ 6 and 19 respectively, Comfed subsequently sold the loan and assigned the Mortgage to the Federal Home Loan Mortgage Corporation ("FHLMC").

On April 18, 1990, the debtors filed a petition under chapter 13 of the Bankruptcy Code ("Code"). On that date, the Note and Mortgage payments were in arrears by approximately $13,000.00. On April 25, 1990, the debtors filed an adversary proceeding to bifurcate FHLMC's claim and "strip" its Mortgage to the value of the residence. On September 4, 1990, FHLMC filed a proof of claim for $151,340.85. The parties stipulated prior to trial that the value of the residence was $127,500.00. On January 10, 1991, the debtors obtained a judgment under Code § 506(a) and (d) which voided FHLMC's Mortgage in excess of $127,500.00. *In re Bellamy*, 122 B.R. 856 (Bankr.D.Conn.1991), *appeal pending.*

On March 8, 1991, the debtors filed the instant Second Amended Plan which proposes to cure the default on the Note

at p. 136.

and Mortgage; pay the allowed amount of the secured claim, *i.e.,* the arrearage,[2] through the plan; and pay monthly installments on the reinstated Note and Mortgage directly to FHLMC. With respect to the payments to FHLMC, the plan also proposes to pay a smaller dollar amount per installment than called for in the Note and Mortgage to reflect FHLMC's reduced secured claim. *See In re Bellamy, Id.* FHLMC objects on several bases, including the argument that the debtors are prohibited by § 1322(b)(2) from modifying the dollar amount of the monthly payments.[3]

## II.

Code § 1325(a) provides in relevant part: [T]he court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title

. . . .

Code § 1322(b) provides in part:

[T]he plan may—

. . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

■ When a claim is bifurcated and a lien is voided under § 506(a) and (d), the recomputed secured claim is arguably ei-

ther paid over the same term but in smaller monthly installments or paid in the agreed upon amount per installment over a shorter term. The debtors' plan adopts the former scenario. They claim that making smaller monthly installment payments gives them a larger disposable income, which in turn, increases the size of the dividend to be paid to unsecured creditors.

■ Since those considerations do not validate plan provisions prohibited by § 1322(b)(2), the real thrust of the debtors' position is that FHLMC's rights are not modified because the Mortgage does not specify the amount of each payment and "the specified amount [in the Note] is a mere mathematical calculation of the *terms* of the Note and is subject to change" (emphasis supplied) *Debtors' Memorandum of Law,* March 18, 1991, at p 3–4. That argument is an unconvincing attempt to divide one loan transaction into two parts. The Note and Mortgage are integrated and indivisible. The Note states in ¶ 10

In addition to the protection given to the Note Holder under this Note, a Mortgage . . . (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.

The Mortgage states

This debt [$133,000.00] is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments. . . . This Security Instrument secures to the Lender: (a) repayment of the debt evidenced by the Note. . . .

UNIFORM COVENANTS

---

**2.** See Plan ¶ 4.

**3.** FHLMC also argued that when a lien is voided under § 506(a) and (d), the entire amount of the recomputed secured claim must be paid under the plan to comply with § 1325(a)(5). That consequence, which would essentially nullify

the use of § 506(a) in chapter 13 cases and which ignores the effect of curing defaults under § 1322(b)(5), *see, In re Taddeo, DiPierro v. Taddeo,* 685 F.2d 24, 26 (2d Cir.1982), is similar to the argument made and rejected in *Bellamy.*

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note....

Contrary to the debtors' assertion, the provision in the Note for the monthly payment of $1,329.79, which, as noted, is incorporated by reference in the Mortgage, is not a mere mathematical calculation of the terms of the Note. In general, the critical elements in loan agreements are the interest rate and the dollar amount of each installment payment. The former is important because it determines the level of profit made by the lender and the cost to the borrower; the latter is important because it constitutes a stream of income to the lender on which it may rely.

The Court of Appeals in this circuit has held that the rights of holders of secured claims are not modified by curing defaults, reinstating the "original payment schedule", and maintaining regular payments under the mortgage. *DiPierro v. Taddeo* (*In re Taddeo*), 685 F.2d 24, 26–28 (2d Cir. 1982).

> ... we believe that the power to 'cure any default' granted in § 1322(b)(3) and (b)(5) is not limited by the ban against 'modifying' home mortgages in § 1322(b)(2) because we do not read 'curing defaults' under (b)(3) or 'curing defaults and maintaining payments' under (b)(5) to be modification of claims. (emphasis supplied).

The *Taddeo* court also recognized that a reduction in payments would constitute a modification within the meaning of § 1322(b)(2). In discussing the legislative history of § 1322(b), the court noted a reduction of payments as an example of a modification:

> [E]arlier Senate bills along with House bills and the present statute listed the power to cure and the power to modify in different paragraphs, indicating that the power to cure is different from the power to modify. Testimony submitted on behalf of secured creditors distinguished between *modifying a claim* (*by reducing payments due thereon*) and curing

a default (and maintaining those payments).

(Emphasis added). *Id.* at 28. A large number of courts have followed that rationale and have concluded that a reduction in the amount of installment payments is a modification prohibited by § 1322(b)(2). *E.g., In re Honett,* 116 B.R. 495, 497 (Bankr.E.D. Tex.1990); *In re Hayes,* 111 B.R. 924, 927 (Bankr.D.Or.1990); *In re Demoff,* 109 B.R. 902, 920 (Bankr.N.D.Ind.1989); *In re Ross,* 107 B.R. 759, 762 (Bankr.W.D.Okla.1989); *In re Simpkins,* 16 B.R. 956, 964 (Bankr.E. D.Tenn.1982).

■ A shorter payment schedule, however, will not modify FHLMC's rights because its Note, *see* ¶ 4, as is common with most loan agreements, specifically provides that the debtors may "make payments of principal at any time before they are due." *In re Hayes, supra,* 111 B.R. at 927; *In re Demoff, supra,* 109 B.R. at 920 ("[T]he mere fact that the amortization schedule is recast does not result in a modification of the security instrument itself.").

### III.

I conclude that the debtors' plan is defective under § 1322(b)(2). Accordingly, the plan does not meet the requirement of § 1325(a)(1), confirmation is DENIED, and IT IS SO ORDERED.