**In re Kimberly A. TERRANOVA, Debtor.**

**Bankruptcy No. 92–52423.**

United States Bankruptcy Court, D. Connecticut.

March 26, 1993.

---

§ 506(a) and (d) bifurcating the first mortgage of New Haven Savings Bank ("NHSB") on her residence and voiding that mortgage to the extent that it exceeds the value of that property. NHSB objects, contending that a prepetition arrearage may not be included as part of its allowed secured claim under § 506(a). The motion is granted because I find that the arrearage is a part of NHSB's allowed secured claim.

## BACKGROUND

Terranova filed a chapter 13 petition on July 17, 1992. On August 31, 1992, NHSB filed a proof of claim as a holder of a first mortgage in the amount of $208,573.13. *See* § 501. Terranova's residential real property is also encumbered by a second mortgage securing a claim of $9,427.13 held by Theodore O. Tompkins and Charles J. Austin d/b/a Catt Enterprises. Terranova contends that the fair market value of her property is $207,000.00 and NHSB's lien should be limited to that amount. NHSB accepts Terranova's valuation but appears to argue that the prepetition arrearage should not be included in the amount of its allowed claim, *see* § 502, and that its claim, as reduced by the arrearage, must be more than the value of the property before Terranova may bifurcate under § 506(a). In other words, NHSB defines the allowed claim referred to in § 506(a) as the amount remaining after the subtraction of any prepetition arrearage.

Maria G. Raus, Freccia & Plotkin, Stamford, CT, for debtor/movant.

Wilbur J. Land, New Haven, CT, for respondent.

**MEMORANDUM AND ORDER ON DEBTOR'S MOTION TO DETERMINE VALUE OF COLLATERAL AND TREATMENT OF SECURED CLAIMS**

ALAN H.W. SHIFF, Bankruptcy Judge.

Kimberly A. Terranova, a chapter 13 debtor, has moved for an order under Code

## DISCUSSION

*a.*

### *Bifurcation*

Parenthetically, it is observed that § 1322(b) does not state that a plan must cure a default. *Compare* § 1322(a). More to the point, NHSB misconstrues the interplay between §§ 506 and 1322. It has been held in this circuit that § 506(a) determines the amount of a claim and § 1322 provides for its payment under the plan.

[T]reatment under the Code turns on whether a *claim* is secured or unsecured, not on whether a *creditor* is secured or unsecured.... [Bifurcation] does not, for purposes of § 1322(b)(2), modify [a mortgagee's] "rights," but rather simply determines how, under the Code, its right to payment must be satisfied.... [W]hether, and the extent to which, one holds a secured claim must *in the first instance* be determined according to § 506(a).

*Bellamy v. Federal Home Loan Mortgage Corporation (In re Bellamy),* 962 F.2d 176, 179, 180, 181 (2d Cir.1992) (emphasis added).[1] When §§ 506(a) and 1322 are applied in the sequence prescribed by *Bellamy,* the flaw in NHSB's argument becomes apparent.

■ Section 506(a) provides in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

The plain language of that section "provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured," *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989), and a claim may be bifurcated into a secured claim and an unsecured claim.

■ The starting point of a § 506(a) bifurcation is an "allowed claim." The word "claim" is broadly defined to include virtually any right to payment. 11 U.S.C. § 101(5); *Johnson v. Home State Bank,* —— U.S. ——, ——, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). Under § 502(a), a "claim ... proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." As no objection was filed by Terranova, NHSB's allowed claim is $208,573.13. Rule 3001(f), F.R.Bankr.P. (proof of claim constitutes prima facie evidence of validity and amount of claim). Terranova's motion seeks to bifurcate that allowed claim.[2]

■ Schedule A of NHSB's proof of claim states that it includes an arrearage of $23,451.88, consisting of several components: delinquent payments of principal and interest, late charges, attorneys' fees, and court costs. Thus, NHSB's arrearage is nothing more than a subset of its allowed claim, i.e., the total debt owed under

---

**1.** *But see Nobleman v. Am. Sav. Bank (In re Nobleman),* 968 F.2d 483 (5th Cir.1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 654, 121 L.Ed.2d 580 (1992). The Fifth Circuit disagreed with the holding of the Second Circuit in *Bellamy* and of three other circuit courts of appeal, *see Eastland Mortgage Co. v. Hart (In re Hart),* 923 F.2d 1410 (10th Cir.1991); *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3d Cir.1990); and *Houghland v. Lomas & Nettleton Co. (In re Houghland),* 886 F.2d 1182 (9th Cir.1989), that bifurcation is permitted in the chapter 13 context notwithstanding § 1322(b)(2).

**2.** It is noted that several courts have held that, in the absence of an objection, a plan may not affect the validity or amount of a secured claim, as to which a timely proof of claim has been filed. *See Sun Finance Co., Inc. v. Howard (In re Howard),* 972 F.2d 639 (5th Cir.1992); *Simmons v. Savell (In re Simmons),* 765 F.2d 547 (5th Cir.1985); *In re Parker,* 148 B.R. 604 (Bankr.D.Idaho 1992); *Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy),* 130 B.R. 318 (9th Cir. BAP 1991); *Matter of Stein,* 63 B.R. 140 (Bankr.D.Neb.1985). These courts typically rely on the provision in § 502(a) that claims are deemed allowed if not objected to, and/or on the due process argument that a secured creditor must have notice that a debtor intends to reduce or eliminate its secured claim. *See, e.g., In re Howard, supra,* 972 F.2d at 640, 642.

Those concerns are not implicated here. Terranova's motion to bifurcate placed NHSB on notice that the question of valuation of its security was challenged by the debtor and joined a contested matter to determine that issue. *See Piedmont Trust Bank v. Linkous (In re Linkous),* 141 B.R. 890, 894, 897 (W.D.Va.1992). Further, § 506(a) deals with "allowed" claims, and a claim to which the debtor timely objects is not allowed until and unless it is determined to be so after a contested hearing, § 502(b). Thus, as Terranova has challenged the value of the property by which NHSB's note is secured, not the amount or validity of NHSB's claim, a motion to determine the value under Rule 3012, F.R.Bankr.P., is procedurally sufficient. *In re Linkous, supra,* 141 B.R. at 894.

its note and mortgage. Indeed, its own documents refute its argument that its total claim is only $186,073.00 (the principal owed exclusive of interest, late charges, attorneys' fees and court costs) for bifurcation purposes. NHSB's promissory note creates the obligation to pay each component of NHSB's claim, i.e., principal, interest, late charges, and fees and costs of collection. Adjustable Rate Note, paragraphs 1, 2, 7(A), (E). The failure to pay any component constitutes a default under the note and mortgage. *See* Open–End Mortgage, paragraphs 1, 2, 19. Each component of the arrearage, like the principal, is secured by the mortgage. Open–End Mortgage, p.1, cl. (a)–(c)., paragraph 7. *See, e.g., Hartford Fed. Sav. & Loan Ass'n v. Tucker,* 196 Conn. 172, 181–82, 491 A.2d 1084, *stay denied,* 474 U.S. 896, 106 S.Ct. 223, 88 L.Ed.2d 222, *cert. denied,* 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985) (tax and insurance escrow payments and legal fees incurred in bankruptcy and foreclosure proceedings are part of secured debt).

Section 506(a) starts with an allowed claim (in this case, $208,573.13), and finishes with a secured claim ($207,000.00) and an unsecured claim ($1,573.13). NHSB's argument suggests a third claim, so that it would hold two separate and distinct secured claims, i.e., a secured claim which does not include the prepetition arrearage, and a secured claim consisting of the arrearage. There is, however, no such classification scheme under bankruptcy law. Each part of a secured claim is not itself a separate secured claim. *See In re Session,*

128 B.R. 147, 152 (Bankr.E.D.Tex.1991) ("the classification of an arrearage is limited by the terms of § 506(a) to being allocated to either the secured or unsecured portion of a claim"); *In re Hayes,* 111 B.R. 924, 927–28 (Bankr.D.Or.1990).

*b.*

### Cure

■■■■ Section 1322(b)(5)[3] applies to the secured claim that remains after § 506(a) has defined the amount of NHSB's allowed secured claim. Just as § 1322(b)(2) protects only NHSB's post-bifurcation secured claim from modification, *see Bellamy, supra,* 962 F.2d at 184, § 1322(b)(5) relates only to the reinstatement of its secured claim.

> In light of the goals of Chapter 13, § 1322(b)(2) and (5) must be read as allowing a debtor to reinstate *in its stripped down form* a residential mortgage that comes due beyond the life of the plan. The debtor must cure arrearages within a reasonable time, *see* § 1322(b)(5), but need make scheduled mortgage payments only until the secured claim is fully paid.

*Id.* at 185 (emphasis added).

■■■■ A plan which proposes to reinstate a secured claim under § 1322(b)(5) must propose to pay collateralized arrearages in full within the term of the plan. *Sapos v. Provident Inst. of Sav. in the Town of Boston,* 967 F.2d 918, 928 (3d Cir.1992);[4] *In re Session, supra,* 128 B.R.

---

**3.** Section 1322(b)(5) provides that a plan may provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

**4.** In *Sapos* the court approved the bifurcation proposed by a plan but found the plan to be defective because it proposed to pay arrearages as part of the *secured debt,* rather than making separate provision for the payment of arrearages. 967 F.2d at 923, 926, and 928. That flaw in the plan would have resulted in the debtor curing the arrearages over a term longer than the permissible term of the plan. *See* § 1322(c). That portion of the *Sapos* holding is consistent

with *Bellamy,* which mandates both cure of the arrearage within a reasonable time and reinstatement of the regular monthly payments if the debtor elects to utilize § 1322(b)(5). *See infra,* pp. 23–24. To the extent that *Sapos* also holds that a § 506(a) bifurcation is not available unless the allowed claim, exclusive of the arrearage, is more than the value of the security, the relevant Code sections and the Second Circuit's holding in *Bellamy* do not permit this court to reach a similar conclusion. It is further noted that *In re Cole,* 122 B.R. 943 (Bankr. E.D.Pa.1991), on which the *Sapos* court relied, held that the debtor could neither reamortize her loan to reduce her monthly payments as a result of bifurcation, nor deduct the unsecured portion of the bifurcated debt from the arrear-

at 152–153. In addition, the interest rate and monthly payment amount applicable to the reinstated secured claim must be the same as those provided for under the loan documents. *Bellamy, supra,* 962 F.2d at 184; *In re Bellamy,* 126 B.R. 134, 137 (Bankr.D.Conn.1991); *In re Hayes, supra,* 111 B.R. at 926.

 Terranova's plan proposes to treat NHSB's secured claim in full compliance with those requirements. The plan provides that NHSB's arrearage will be paid in full by the trustee out of funds he receives each month from Terranova; Terranova will make monthly payments directly to NHSB in the amount prescribed in its reinstated note and mortgage; and the trustee will distribute NHSB's prorata share of the money allocated for unsecured claims. Thus, to the extent NHSB has security for its claim, it will receive repayment in full. To the extent NHSB does not have security for its claim, it, like all holders of unsecured claims, will be paid a percentage of its unsecured debt. To deny bifurcation in this case would require Terranova to pay more than the value of her residence to satisfy the lien, thus creating "perverse incentives in favor of liquidation (contrary to the purpose of the Code), pursuant to which the debtor's personal liability generally is discharged once the creditor's *in rem* rights are exercised." *Bellamy, supra,* 962 F.2d at 185. *Cf. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 373, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988) (§ 506(b) reflects pre-Code law that it is "unfair to allow an undersecured creditor to recover interest from the estate's unencumbered assets before unsecured creditors had recovered any principal").

### ORDER

Terranova's Motion to Determine Value of Collateral and Treatment of Secured

ages in determining what amount need be paid under the plan to cure the default in compliance with § 1322(b)(5). *Bellamy* would prohibit both of those proposals. *See infra* pp. 23–24. Notwithstanding that the *principal balance* owed on the loan in *Cole* (exclusive of the arrearages) was less than the value of the security, the *Cole* court

Claims is granted. The value of her residence is $207,000.00. NHSB has an allowed secured claim in that amount; and its lien is void and its claim is unsecured to the extent that they exceed that amount. The claim of Theodore O. Tompkins and Charles J. Austin d/b/a Catt Enterprises is an allowed unsecured claim, and their lien is void. IT IS SO ORDERED.

ordered the bifurcation of the loan into secured and unsecured portions, apparently because it interpreted the § 506(a) allowed claim to be the "total balance due on the underlying mortgage," which exceeded the value of the security. *In re Cole, supra,* 122 B.R. at 945, 948, 949 and 952.