**In re William J. KLUS and Joanne M. Klus, Debtors.**

**Bankruptcy No. 92–50062. Docket Id. No. 29.**

United States Bankruptcy Court, D. Connecticut.

Oct. 13, 1994.

Richard J. Beatty, The Pellegrino Law Firm, Guilford, CT, for movant Keycorp Mortgage Inc.

Daniel Meister, Charmoy & Nugent, Bridgeport, CT, for debtors.

## MEMORANDUM AND ORDER ON MOTION TO MODIFY PLAN AFTER CONFIRMATION

ALAN H.W. SHIFF, Bankruptcy Judge.

The movant, Keycorp Mortgage Inc., seeks to modify the debtors' confirmed chapter 13 plan so that its claim will be treated as fully secured, rather than secured in part and unsecured in part.[1] For the reasons that follow, I conclude that Keycorp's motion must be denied.

### BACKGROUND

The debtors commenced this chapter 13 case on January 9, 1992. On March 16, 1992, the debtors filed a Motion to Determine Status and Amount of Creditor's Claim (the "506(a) Motion")[2] which alleged that the debtor's residence was encumbered by a first mortgage securing a $140,000.00 debt to Keycorp and that the fair market value of the residence was $120,000.00.

On April 29, 1992, Keycorp filed an objection (the "Objection") to the 506(a) Motion on the sole ground that that motion understated the value of the residence and that Keycorp's claim was in fact fully secured. On June 15, 1992, Keycorp filed a memorandum of law which stated that § 1322(b)(2) prohibited the use of § 506(a) to treat any portion of Keycorp's claim as unsecured. Keycorp relied primarily on *In re Mitchell*, 125 B.R. 5 (Bankr.D.N.H.1991), notwithstanding the Second Circuit's April 21, 1992, decision in *Bellamy v. Fed. Home Loan Mortgage Corp. (In re Bellamy)*, 962 F.2d 176 (2d Cir.1992), which it did not attempt to distinguish. Keycorp also filed a list of exhibits to which it attached a May 12, 1992 appraisal stating the value of the residence was $123,000.00.

On August 5, 1992, the parties stipulated (the "Stipulation") that the 506(a) Motion should be granted; the fair market value of the residence was $121,500.00; and Key-corp's claim was $139,389.96, of which $17,-889.96 was "to be deemed unsecured." On August 7, 1992, an order (the "506(a) Order") entered establishing the facts agreed to in the Stipulation.

On January 6, 1993, an order (the "Confirmation Order") entered confirming the debtors' Second Amended Chapter 13 Plan (the "Plan"). Paragraph 3.d.i. of the Plan provided for a ten percent dividend on unsecured claims, and stated that those claims included "$17,889.96 which sum is the amount by which the [Keycorp] mortgage ... is unsecured pursuant to the Stipulation...." Paragraph 5 of the Plan provided that the holder of each allowed secured claim "shall retain the lien securing the claim only to the extent of the value of the asset securing the same" and provided for its payment "up to the amount of the value of the asset securing said claim." No notice of appeal from the 506(a) Order or Confirmation Order was filed.

On September 7, 1993, Keycorp filed the instant Motion to Modify Plan After Confirmation pursuant to § 1329. The motion seeks to amend the Plan to delete the references contained in Paragraphs 3 and 5 of the Plan, so as to eliminate any finding that Keycorp's claim was unsecured to any extent. The motion does not seek to increase or reduce the amount of payments on claims of any class provided for by the Plan.

Keycorp alleges that the bifurcation of its claim by the 506(a) Order, Plan, and Confirmation Order, while in accord with the law of the Second Circuit at that time, is now not permitted under the Supreme Court's June 1, 1993, decision in *Nobelman v. Am. Sav. Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Keycorp seeks to apply *Nobelman*, even though it was decided after the unappealed Confirmation Order. On December 9, 1993, the debtors objected to the motion.

---

1. The certification of service attached to the motion indicates that it was sent only to the debtors, their attorney, the chapter 13 trustee, and the United States trustee, and notice of the hearing on the motion was sent to the same parties. That service was defective because of the failure to serve all creditors and Keycorp did not seek to limit notice. *See* § 1329(b)(2); Rules 2002(a)(6), 3015(g) Fed.R.Bankr.P. I nevertheless reach the merits of the motion because the debtor's objection is well-founded. *Cf. In re Rimmer*, 143 B.R. 871, 873 (Bankr.W.D.Tenn.1992).

2. An apparently identical motion was filed on March 26, 1992.

## DISCUSSION

Section 1327 provides:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

Section 1329 provides in relevant part:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

The motion raises three issues: (i) does res judicata eliminate the application of *Nobelman* to this case in which the Plan has been confirmed and no appeal has been taken; (ii) *if the answer to (i) is yes, does § 1329 change that result*; and (iii) if the answer to (ii) is no, does § 105(a) provide an independent ground for granting the motion.

## I. Res Judicata and Retroactivity

■ It is well settled that "[u]nder § 1327, a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir.1989). *Accord Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160, 162 (4th Cir.1993); *Sun Fin. Co., Inc. v. Howard (In re Howard)*, 972 F.2d 639, 642 (5th Cir.1992); *Anaheim Sav. and Loan Ass'n v. Evans (In re Evans)*, 30 B.R. 530, 531 (9th Cir. BAP 1983). In an analogous case, the Second Circuit has held that an order confirming a chapter 11 plan was res judicata as to lender liability claims that could have been asserted preconfirmation. *Sure–Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869 (2d Cir.1991).

■ Parenthetically, it is observed that several courts have questioned the res judicata effect of an order confirming a plan that utilized a 506(a) bifurcation where there was inadequate due process, e.g., a proof of claim was not filed or a filed claim was not objected to. *See In re Howard, supra*, 972 F.2d at 642; *Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy)*, 130 B.R. 318, 320 (9th Cir. BAP 1991). That concern is absent here. Keycorp filed a proof of claim and objected to the proposed valuation in the 506(a) Motion. The 506(a) Motion had the effect of challenging the allowance of the claim as filed, and Keycorp had a full and fair opportunity to assert its position prior to confirmation. *In re Terranova*, 152 B.R. 20, 22 n. 2 (Bankr.D.Conn.1993). *Cf. Lee Servicing Co. v. Wolf (In re Wolf)*, 162 B.R. 98, 108 (Bankr.D.N.J.1993) (a debtor may modify an undersecured claim and void the lien through a plan provision of which creditor receives notice, and neither adversary proceeding, nor objection to claim, nor motion under Rule 3012, Fed.R.Bankr.P., is required).

"Res judicata will preclude relitigation of a claim where the earlier decision was a final judgment on the merits rendered by a court of competent jurisdiction, in a case involving the same parties or their privies, where the same cause of action is asserted in the later litigation." *Amalgamated Sugar Co. v. NL*

*Indus., Inc.,* 825 F.2d 634, 639 (2d Cir.), *cert. denied,* 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987). Consent judgments such as those involved here are entitled to res judicata effect. *Id.* Of the elements identified in *Amalgamated Sugar,* the only arguable issue centers on whether Keycorp's motion to modify asserts the same cause of action as the 506(a) Motion. But since a cause of action is defined by the relevant transaction, evidence, and factual issues, *Sure–Snap Corp., supra,* 948 F.2d at 874, and Keycorp's motion is merely an attempt to relitigate the status of its claim after a change in the law occurring after the Confirmation Order, it is apparent that the two motions in fact assert the same cause of action.[3] That cause of action is the same after *Nobelman* as it was when the Confirmation Order entered. This conclusion is buttressed by the need for finality promoted by res judicata. To conclude otherwise would permit creditors bound by final judgments to seek a modification under § 1329(a) every time the law changed by judicial decree or act of congress.

■ In *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), seven plaintiffs brought antitrust actions against a single defendant. The district court dismissed all seven actions on a particular legal principle, and five of the plaintiffs appealed to the Ninth Circuit Court of Appeals. The two non-appealing plaintiffs refiled in state court alleging similar state law claims. Those state court lawsuits were removed to the federal district court, which dismissed them on res judicata grounds. The two plaintiffs appealed that dismissal. While both appeals were pending, the Supreme Court reversed a decision in an unrelated case on the same legal principle the district court had relied upon in dismissing the seven actions, and on the basis of that ruling, the Circuit Court ruled that all the plaintiffs, including the two plaintiffs who did not appeal the original dismissal, were entitled to the benefit of that change in the law because their positions were "closely interwoven." On appeal from that decision, the Supreme Court reversed.

> A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong *or rested on a legal principle subsequently overruled in another case....* Respondents here seek to be the windfall beneficiaries of an appellate reversal procured by other independent parties, who have no interest in respondent's case.... [R]espondents here made a calculated choice to forgo their appeals.

*Id.* at 398, 400–01, 101 S.Ct. at 2428, 2428–29 (emphasis added) (citations omitted); *accord Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 377–78, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940); *Ripperger v. A.C. Allyn & Co.,* 113 F.2d 332, 333 (2d Cir.), *cert. denied,* 311 U.S. 695, 61 S.Ct. 136, 85 L.Ed. 450 (1940); *Lim v. Cent. DuPage Hosp.,* 972 F.2d 758, 763 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993); *In re Miller,* 153 B.R. 269, 274–76 (Bankr.D.Minn.1993) (bankruptcy court ruling that pension plans were property of the estate in reliance on clear Eighth

---

**3.** "[T]he test for deciding sameness of claims requires that the same transaction, evidence, and factual issues be involved. Also dispositive to a finding of preclusive effect, is whether an independent judgment in a separate proceeding would 'impair or destroy rights or interests established by the judgment entered in the first action.' *Herendeen v. Champion Int'l Corp.,* 525 F.2d 130, 133 (2d Cir.1975)." *Sure–Snap Corp., supra,* 948 F.2d at 874 (citation omitted). That test does not require that the applicable law remain unchanged between the first and second judgments. The *Sure–Snap* criteria are satisfied here: the actions relate to the bifurcation of the same secured claim; the same facts and evidence

relative to the propriety of bifurcation and the value of the security are involved; and the motion would completely vitiate the 506(a) Order and the relevant portions of the Confirmation Order if granted. *See Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 39 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993) (identity of facts, not legal theories, determines sameness of causes of action). It is also noted that both the 506(a) Motion and the instant motion arise under title 11 and are therefore core proceedings. *See* 28 U.S.C.A. §§ 157(b)(1), (2)(A), (B), (K), (L), and (O) (West 1993); *Sure-Snap Corp., supra,* 948 F.2d at 873.

Circuit precedent was res judicata notwithstanding Supreme Court's subsequent contrary holding in unrelated case).[4]

Here, Keycorp is in precisely the same position and is therefore barred by the doctrine of res judicata from receiving the benefits achieved by the *Nobelman* appellee who successfully challenged the legal principle enunciated in *Bellamy*. Even if the Confirmation Order was wrong under the then-existing law—and Keycorp does not even argue that it was—it is a final order and cannot be disturbed. *See Matter of Battle*, 164 B.R. 394, 398–99 (Bankr.M.D.Ga.1994) (confirmed plan which failed to provide for interest on arrearages in contravention of Supreme Court interpretation of § 1325(a)(5) was binding on creditor who did not object or appeal); *Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.)*, 162 B.R. 935, 946 (Bankr. S.D.N.Y.1994); *Matter of Walker*, 128 B.R. 465, 467–68 (Bankr.D.Idaho 1991) (even though confirmed plan modified secured claim in violation of § 1322(b)(2), § 1327(a) and principles of res judicata precluded creditor, who did not object to confirmation, from collaterally attacking the plan).[5]

Contrary to Keycorp's contention that a rule of law enunciated by the Supreme Court has a blanket retroactive effect upon all decisions inconsistent with that ruling, the Court held in *James B. Beam Distilling Co. v.*

*Georgia*, 501 U.S. 529, 544, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481 (1991) that when it "has applied a rule of law to the litigants in one case it must do so with respect to all others *not barred by procedural requirements or res judicata*" (emphasis added). The Court emphasized that "retroactivity in civil cases must be limited by the need for finality," and that "once suit is barred by res judicata ..., a new rule cannot reopen the door already closed." *Id.* at 541, 111 S.Ct. at 2446. In *Harper v. Virginia Dep't of Taxation*, —— U.S. ——, ——, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993), a majority of the Court clarified the rule in *Beam:* "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases *still open on direct review* and as to all events, regardless of whether such events predate or postdate our announcement of the rule" (emphasis added).

Accordingly, the *Nobelman* decision applies only to cases still open on direct review.[6] Because the Confirmation Order is final, this case is not open on direct review.[7] Keycorp's reliance upon the more flexible retroactivity analysis of *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), is misplaced because as noted in *Beam* and *Harper*, even if a decision might

---

4. While collateral estoppel may be rendered inapplicable by a substantial post-judgment change in law because the identity of litigated issues could be destroyed, *see United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993), that exception does not generally apply to res judicata, nor even to collateral estoppel if the second action arises out of the same transaction or set of operative facts that formed the basis of the first action. *See O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1069 (3d Cir.1991). A limited exception recognized by some courts for changes in important, fundamental constitutional rights, *see, e.g., Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1504 (11th Cir.1984), *cert denied*, 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985), is obviously not implicated here. Further, retroactivity of judicial decisions, which do not override the application of res judicata, should be distinguished from retroactivity of statutes, which could do so by creating new causes of action. *See* 1B MOORE'S FEDERAL PRACTICE ¶ 0.415 at pp. III–307—III–308 (2d ed. 1993).

5. Arguably the failure to comply with the provisions of § 1322(a), which are mandatory, could

be grounds for denying preclusive effect to a confirmed plan, although failure to comply with § 1325(a), which has been held to provide sufficient, but not necessary, conditions for confirmation, could not. *See In re Szostek, supra*, 886 F.2d at 1411–1412; *but see Barnes v. Barnes (In re Barnes)*, 32 F.3d 405, 407 (9th Cir.1994) (requirements of § 1325(a)(5) are mandatory). As noted, Keycorp does not allege that the Plan did not comply with the law in effect on the date of confirmation.

6. In the absence of an express limitation to prospective effect or a reservation of that issue, *Nobelman* is presumed to have followed the normal rule of retroactive application. *Harper, supra*, —— U.S. at ——, 113 S.Ct. at 2518.

7. *Independence One Mortgage Corp. v. Wicks (In re Wicks)*, 5 F.3d 1372 (10th Cir.1993), cited by Keycorp, holds only that *Nobelman* applied to that case which was obviously still open on direct review when *Nobelman* was announced.

arguably be given retroactive effect, that result would not override the application of res judicata.[8]

The theoretical effect of a decision overruling precedent with retroactive effect is not to change the results previously reached, but to render erroneous the precedential authority now overruled.... [T]he res judicata effect of a judgment is not in the least diminished by the fact that it was erroneous.... [C]hanges of law effected by judicial decision ... with retroactive effect ... cannot provide the basis for litigation that would previously have been barred by res judicata....

1B MOORE'S FEDERAL PRACTICE ¶ 0.415 at p. III–309 (2d ed. 1993) (footnotes omitted).[9]

Keycorp's argument was rejected by *In re Wolf, supra,* 162 B.R. at 105 & n. 8.

This court confirmed the chapter 13 plan based on the then current law of the Third Circuit allowing cram down and lien stripping in chapter 13 cases.... The court holds that the *Nobelman* decision does not apply retroactively where a final order of confirmation has previously approved lien-stripping under a plan.... If [the plaintiff] had raised retroactivity in the context

of a timely appeal from the order of confirmation, *Nobelman* would have applied under *James B. Beam Distilling Company.*

■ In essence, Keycorp seeks the revocation of the Confirmation Order and Plan. Section 1330 permits revocation only on request made within 180 days after the date of entry of the order of confirmation, and only if the confirmation order was procured by fraud. Rule 7001(5) Fed.R.Bankr.P. requires that a proceeding to revoke a confirmation order be brought as an adversary proceeding. The instant motion satisfies none of those criteria.

## II. Modification Under § 1329

Having concluded that res judicata bars the application of *Nobelman* to this case, the issue emerges, does § 1329 change that result. Some courts hold that the plain language of the statute empowers modification. Others conclude that the concept of res judicata requires a threshold showing of substantial change in the debtor's financial circumstances as a prerequisite to modification.

Those courts concluding that modification is permissible under the plain language of the statute hold that no threshold showing of

---

**8.** Because the new rule analyzed in *Chevron Oil* was announced "[w]hile pretrial discovery proceedings were still under way" in the district court, 404 U.S. at 99, 92 S.Ct. at 351, *Chevron Oil* cannot be read to support application of a new Supreme Court rule to a case not open on direct review. Further, even if this case were still open on direct review, *Nobelman* would not apply under the *Chevron Oil* test. The first prong of *Chevron Oil* is satisfied because *Nobelman* decided an issue of first impression with the Court, the resolution of which was not "clearly foreshadowed." 404 U.S. at 106, 92 S.Ct. at 355. The Second Circuit's opinion in *In re Bellamy, supra,* 962 F.2d 176, was issued on April 21, 1992, or about one week before Keycorp filed its objection to the 506(a) Motion. At that time, three courts of appeals had agreed with the holding in *Bellamy,* and none had disagreed. The Fifth Circuit issued a decision in *Nobleman v. Am. Sav. Bank (Matter of Nobleman),* 968 F.2d 483 (5th Cir.1992), which declined to follow *Bellamy,* on August 13, 1992, or about a week after the 506(a) Order had entered. The Supreme Court did not affirm *Nobelman* until June 1, 1993, some 10 months after the 506(a) Order and five months after the Confirmation Order. The second and third *Chevron Oil* prongs are arguably satisfied because the operation of the *Nobel-*

man rule would not be furthered by retroactive application, and such application would result in substantial inequitable results to debtors who relied on the rule of *Bellamy.* 404 U.S. at 106–07, 92 S.Ct. at 355–56.

**9.** *In re Jourdan,* 108 B.R. 1020 (Bankr.N.D.Iowa 1989) could be read to support a contrary position, but may be distinguished because (i) it was largely grounded on the assumption that a debtor's right to modify is much broader than an unsecured creditor's, and (ii) it assumed that the debtor could achieve the same result by dismissing and refiling. *Id.* at 1022–23. Neither rationale applies here. I also note that neither § 1327, nor § 1329, nor the principles of finality upon which res judicata rests, suggest that a different standard should be applied based on the movant's status as debtor, trustee, or unsecured creditor. *State Farm Mut. Auto. Ins. Co. v. Duel,* 324 U.S. 154, 162, 65 S.Ct. 573, 577, 89 L.Ed. 812 (1945), relied on by *Jourdan,* is distinguishable because it involved the constitutionality of a state statute, and because the Court's subsequent holding in *Federated Dep't Stores, Inc., supra,* more closely approximates the facts here. For a discussion of *Duel,* see 1B MOORE'S FEDERAL PRACTICE ¶ 0.415 at pp. III–309—III–310 and n. 30 (2d ed. 1993).

a change in financial circumstances is necessary. *See Matter of Witkowski,* 16 F.3d 739, 746 (7th Cir.1994). *Accord In re Powers,* 140 B.R. 476, 479 (Bankr.N.D.Ill.1992); *In re Perkins,* 111 B.R. 671, 673 (Bankr.M.D.Tenn. 1990). Those courts note that resort to legislative history to support such a requirement is unwarranted. *See In re Perkins, supra,* 111 B.R. at 673. They further conclude that § 1329 is a congressional exception to res judicata, *see Matter of Witkowski, supra,* 16 F.3d at 745, and they reject the change in circumstances analysis adopted by other courts as an inappropriate judicial response to the 1984 amendment to § 1329 which permits the trustee and unsecured creditors to seek post-confirmation modifications. *In re Perkins, supra,* 111 B.R. at 673. It is important to note, however, that their rejection is qualified by their recognition that although a change in circumstances is not mandated as a condition precedent to modification, it is nonetheless relevant evidence to the issue of whether the elements of § 1329(b)(1) are satisfied, e.g., such a change may be necessary to satisfy the good faith, feasibility and best interests of the creditors tests contained in § 1325(a). *See In re Perkins, supra,* 111 B.R. at 673.

The competing line of cases holds that "[t]he doctrine of *res judicata* limits the permissible grounds for modification of a confirmed plan." *In re McNulty,* 142 B.R. 106, 109 (Bankr.D.N.J.1992); *accord In re Algee,* 142 B.R. 576, 580–582 (Bankr.D.Dist.Col. 1992); *In re Weissman,* 126 B.R. 889, 893 (Bankr.N.D.Ill.1991); *In re Fitak,* 92 B.R. 243, 249–50 (Bankr.S.D.Ohio 1988), *aff'd,* 121 B.R. 224 (S.D.Ohio 1990). Those courts note that but for the application of res judicata to the order confirming chapter 13 plans, § 1327(a) "would be rendered meaningless, with any confirmation issue subject to being revisited at whim." *In re Algee, supra,* 142 B.R. at 580. In order to give full effect to § 1327(a) and its res judicata consequences, those courts conclude that modification under § 1329(a) should be ordered only "upon a showing of changed circumstances which affect a debtor's ability to pay," which change could not "have been *reasonably anticipated*

at the time of confirmation by the parties seeking modification." *In re Fitak, supra,* 92 B.R. at 249, 250 (emphasis in original). Those courts generally require that the changed circumstances be not only unanticipated, but also "substantial." *See In re Wilson,* 157 B.R. 389, 390–91 (Bankr. S.D.Ohio 1993). *Accord Anderson v. Satterlee (In re Anderson),* 21 F.3d 355, 358 (9th Cir.1994); *Arnold v. Weast (In re Arnold),* 869 F.2d 240, 243 (4th Cir.1989); *In re Solis,* 172 B.R. 530, 532 (Bankr.S.D.N.Y.1994); *In re Hutchins,* 162 B.R. 1014, 1023 (Bankr. N.D.Ill.1994); *In re Duke,* 153 B.R. 913, 918 (Bankr.N.D.Ala.1993); *In re Bereolos,* 126 B.R. 313, 325 (Bankr.N.D.Ind.1990); *cf. Johnson v. Vanguard Holding Corp. (In re Johnson),* 708 F.2d 865, 868 (2d Cir.1983) (suggesting that debtor's post-confirmation job loss and caring for ill mother may have been grounds for modification under § 1329). Under those cases, the movant has the burden of proving the unanticipated, substantial change in circumstances. *In re Weissman, supra,* 126 B.R. at 893.

There may be little practical difference between those two positions. The plain language of subsection (3) of § 1329(a) requires a post-confirmation change in circumstances, i.e. payment on the claim outside of the plan. While subsections (1) and (2) contain no such requirement, the significance of that fact is limited by § 1329(b)(1), which requires that the modified plan comply with § 1325(a). If, for example, a creditor seeks to modify the plan to increase payments to the unsecured creditor class under § 1329(a)(1), the modification cannot be approved unless the debtor has the ability to make the increased payments. *See* § 1325(a)(6). If the debtor has satisfied the obligation to use all disposable income to fund the plan, *see* § 1325(b), the creditor's modification will be disapproved unless there has been a post-confirmation improvement in the debtor's financial circumstances. Conversely, any effort by the debtor to reduce payments is circumscribed by the good faith requirement of § 1325(a)(3), and possibly by the disposable income test of § 1325(b).[10]

10. Section 1329(b)(1) specifies that the requirements of § 1325(a) apply to the modification but

■ I conclude that the two lines of cases may be harmonized so that the application of res judicata and the code's plain language are respected. The modification should be strictly limited to the enabling provisions of § 1329(a). Thus a plan may be modified at the request of the debtor, trustee, or an unsecured creditor who seeks to change the plan in one or more of the ways permitted by § 1329(a) so long as the modification is consistent with the statutory limitations of § 1329(b)(1). If those criteria are met, the court may, after notice and a hearing, still disapprove that modification, *see* § 1329(b)(2); *Matter of Witkowski, supra,* 16 F.3d at 746 (modification of plan is permissive, not mandatory), and in the exercise of that discretion, must disapprove the modification if it is determined that res judicata applies.[11]

■ But even if there is a non-*de minimis* change of circumstances which would eliminate the application of res judicata, I share the concern of many courts that § 1329(a) should not be abused by repetitive modifications and that the confirmation order should have a significant degree of finality. *See In re Anderson, supra,* 21 F.3d at 358 n. 8 ("Section 1329 protects the debtor from unreasonable plan amendments."); *In re Wilson, supra,* 157 B.R. at 391–92; *In re Cook,* 148 B.R. 273, 280 (Bankr.W.D.Mich. 1992) (chapter 12) ("serial filings for modifi-

cation ... could utterly frustrate reorganization."). The code provides the court with sufficient flexibility to prevent such abuses. Therefore, while I agree with the *Perkins* line of cases that a substantial, unanticipated change of circumstances is not a threshold requirement for modification under § 1329(a), the absence of such a change should be a factor in the exercise of the court's discretion. Resort to the legislative history, which suggests that § 1329 was designed to accommodate unanticipated changes in circumstances substantially affecting a debtor's ability to pay, is appropriate to provide guidance to the court in its exercise of discretion. *See In re Fitak, supra,* 92 B.R. at 249 (discussing legislative history).[12] That approach is supported by the Second Circuit's conclusion in *In re Johnson, supra,* 708 F.2d at 868, reached after resort to the legislative history, that a § 1329 modification was a more appropriate procedure than a serial filing to accommodate changed circumstances. In the final analysis, I conclude that the court should only allow modification if the change of circumstances is unanticipated and substantial, e.g., the post-confirmation filing of significantly higher or lower proofs of claim that were not accounted for in the plan, or a significant change in the debtor's financial condition.[13]

■ The instant motion must fail because it does not fit within any of the three catego-

is silent as to § 1325(b). However, § 1325(a)(1) requires compliance with the provisions of chapter 13, which of course include § 1325(b). Arguably, then, an objection to approval of a modification could implicate § 1325(b).

**11.** While a hearing is not required in the absence of a request, § 102(1)(B), the court may raise the propriety of a proposed modification *sua sponte* where appropriate, § 105(a).

**12.** Both lines of cases recognize the propriety of considering changed circumstances, whether in connection with the confirmation standards made applicable by § 1329(b)(1), including the good faith requirement of § 1325(a)(3), or in connection with the threshold viability of the motion.

**13.** It is noted that, where the plan confirmation precedes the claims bar date, § 1329 would generally permit the trustee to seek an increase in the percentage of plan payments to unsecured creditors due to an unexpectedly low amount of unsecured claims being filed, and would general-

ly permit the debtor to seek a decrease where the claims were unexpectedly high. Because the trustee or a creditor could not interpose an objection to confirmation based on an unknown amount of total claims, res judicata would not prohibit those parties from seeking a modification where the amount was lower than contemplated by the plan. Some courts have held that a greater or lesser amount of claims is a changed circumstance, i.e. a change in the debtor's ability to pay, justifying a § 1329(b) modification. *See, e.g., In re Bostwick,* 127 B.R. 419, 420 (Bankr. N.D.Ill.1991). Similarly, modification by the trustee to provide for payment of a large administrative claim not provided for by the confirmed plan, but which must be paid under 1322(a)(2), would not offend principles of res judicata. *See Matter of Escobedo,* 169 B.R. 178 (Bankr. N.D.Ind.), *aff'd,* 1993 WL 725091 (N.D.Ind., May 26, 1993), *aff'd,* 28 F.3d 34 (7th Cir.1994). Further, where creditors retain the right to file timely proofs of claim post-confirmation, res judicata and § 1327(a) should not infringe upon that right. *See In re Grogan,* 158 B.R. 197, 200 (Bankr.E.D.Cal.1993).

ries of § 1329(a) and because in any event res judicata would prohibit the requested modification. Specifically, subsections (2) and (3), which permit modification to extend or reduce the time period for payments or to change distributions based on payments made outside of the plan, are not even arguably implicated. Nor can subsection (1), which permits modification to "increase or reduce the amount of payments on claims of a particular class provided for by the plan," accommodate the requested relief. The proposed modification does not change payments to an entire class, but rather changes Keycorp's status from an undersecured to a fully secured creditor. Section 1329(a)(1) "does not permit individualized treatment of class members or the reclassification of a single creditor from a secured to an unsecured status." *Sharpe v. Ford Motor Credit Co.*, 122 B.R. 708, 710 (E.D.Tenn.1991); *accord In re Wolf, supra,* 162 B.R. at 103 n. 5; *In re Duke, supra,* 153 B.R. at 919; *In re Weissman, supra,* 126 B.R. at 893 (§ 1329(a)(1) and (2) permit modification only as to classes of creditors, not as to individual creditors).[14] Moreover, the removal of Keycorp's unsecured claim from the unsecured creditors' class would not change the payments to unsecured creditors because no such change

was included in the proposed modification. Similarly, the proposed modification would not affect either the amount of monthly payments or the total amount of payments on Keycorp's secured claim.[15] Indeed, even if Keycorp amended its modification to make corresponding reductions in the payment to the unsecured class, the motion would still fail because the unamended provisions of its modification, which propose to reclassify Keycorp's claim as fully secured, are beyond the purview of § 1329(a)(1). *See In re Holt,* 136 B.R. 260, 261 (Bankr.D.Idaho 1992) ("[Section] 1329(a)(1) ought to be limited to adjustments in amounts of payments under the plan as opposed to material changes in the treatment of secured creditors."); *In re Taylor,* 99 B.R. 902, 904–905 (Bankr.C.D.Ill. 1989) (§ 1329(a)(1) does not permit a modification to reclassify claims). As an independent ground for denying the motion to modify under § 1329(a), I find that Keycorp has failed to meet its burden of proving that all of the requirements of §§ 1322(a) and (b), 1323(c), and 1325(a) would be met as to the modified plan. *See* § 1329(b)(1).[16]

Further, even if § 1329(a) permitted such modification, res judicata requires the disapproval of the modification. Keycorp alleges

**14.** I distinguish *In re Frost,* 96 B.R. 804 (Bankr. S.D.Ohio 1989), *aff'd,* 123 B.R. 254 (S.D.Ohio 1990), and *Williams v. First Nat'l Bank (In re Williams),* 108 B.R. 119 (Bankr.N.D.Miss.1989) which permitted a post-confirmation modification to bifurcate a claim under § 506(a), on the grounds that those cases (i) involved post-petition changes in financial circumstances of the debtors and (ii) did not involve the relitigation of a § 506(a) issue determined pre-confirmation. I note, however, that unlike collateral estoppel, res judicata bars claims which could have been asserted but were never raised or litigated, so that if the plan proposes full payment of a secured claim, the debtor should as a general rule be precluded from seeking to modify the plan to bifurcate the secured claim. *See In re Algee, supra,* 142 B.R. at 580–82. I also distinguish the line of cases dealing with whether the debtor may amend a chapter 13 plan to abandon collateral, typically an automobile, to the secured creditor and pay the deficiency as an unsecured claim. *See In re Rimmer,* 143 B.R. 871, 874–76 (Bankr.W.D.Tenn.1992); *In re Jock,* 95 B.R. 75, 76–77 (Bankr.M.D.Tenn.1989). In those cases, payments on the secured claim, generally a separate "class", are decreased because the value of the collateral has declined more rapidly than contemplated by the periodic payments on the claim. Further, the debtor in such cases could

often obtain an equivalent result by converting the case to chapter 7. Here, Keycorp could seek conversion only for cause. *See* § 1307(c).

**15.** The proposed modification addresses only the Plan, not the Confirmation Order. That order independently fixes the amount and number of payments, which are to be applied to Keycorp's secured arrearage, its unsecured claim, and other claims. Payments on Keycorp's secured arrearage and payments directly to Keycorp under the reinstated note would remain unchanged.

**16.** While Keycorp has not raised Rule 60(b)(5) Fed.R.Civ.P., made applicable by Rule 9024 Fed. R.Bankr.P., as a ground for reopening the Confirmation Order, it is noted that reliance on a judgment in an unrelated case, which unrelated judgment is later reversed or overruled, is not within the scope of that rule. *See In re Teti,* 30 B.R. 767, 769 (Bankr.M.D.Pa.1983). Indeed, even a non-appealing defendant cannot benefit from a reversal obtained by an appealing defendant in the same case unless interests of the former are so interwoven with and dependent upon those of the latter as to be inseparable. *Cruickshank & Co., Ltd. v. Dutchess Shipping Co., Ltd.,* 805 F.2d 465, 467–68 (2d Cir.1986). As to Rule 60(b)(6), "[f]ailure to properly assess the

no change of facts and, as noted *supra*, the change in law it relies upon does not bar the application of that doctrine. *See Matter of Pence*, 905 F.2d 1107, 1110 (7th Cir.1990); *In re Arkell*, 165 B.R. 432, 434–35 (Bankr. M.D.Tenn.1994).

### Section 105(a)

█ Finally, I also reject Keycorp's argument that I have authority to grant the instant motion under § 105(a). As the Court held in *Federated Dep't Stores, supra*, 452 U.S. at 401, 101 S.Ct. at 2429:

> The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*." *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946).... This Court has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Traveling Men's Assn.*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931).

It is also well established that § 105(a) can only be exercised within the confines of the bankruptcy code and cannot be used in a manner inconsistent with the code. *Fed. Deposit Ins. Corp. v. Colonial Realty Co.*, 966 F.2d 57, 59 (2d Cir.1992). The code does not sanction Keycorp's attempt to circumvent res judicata through the use of § 1329.[17]

### ORDER

For the foregoing reasons, the motion is DENIED, and IT IS SO ORDERED.

█

---

risks and potential gains of taking an appeal is not an extraordinary circumstance that would justify relief under Rule 60(b)(6)." *Id.* at 468. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1147 (2d Cir.1994) ("An argument based on hindsight regarding how the movant would have preferred to have argued its case does not provide grounds for Rule 60(b) relief....").

17. Were an examination of the equities in order here, they would lie with the debtors, who have been performing their obligations under the Plan in reliance on its presumed validity, and should likewise be entitled to its benefits.